## GIHON and others *against* STANTON and others.

Where a commission merchant makes advances upon the faith of goods consigned to him for sale, by the payment of a sight draft drawn upon him by the consignor, the proceeds of the consigned property, when it has come to his hands, are the primary fund to which the acceptor must look for reimbursement; and it is incumbent upon him to show that fund to be insufficient, before he can recover against the consignor personally.

THIS was an action of assumpsit, commenced in January, 1848, to recover the money paid upon four drafts, drawn by the agent of the defendants upon the plaintiffs, and

accepted and paid by the latter.   The drafts were as follows:

- 1 dated July 10th, 1845, at sight for $1600
- 1 " July 14th, " " 500
- 1 " July 16th, " " 1000
- 1 " July 19th, " " 400

The plaintiffs during the year 1845 were commission merchants in the city of Philadelphia, and the defendants during the same time were manufacturers of woolen goods in the county of Oneida in this state.

On the 10th day of July, 1845, the defendants by their agent consigned to the plaintiffs, to be sold by them on commission, seven cases of woolen cloths, of which the plaintiffs were apprized by letter accompanying the drafts drawn on that day.

On the 15th day of July, 1845, the defendants made another consignment to the plaintiffs of seven more cases of cloths to be sold in like manner; and on the 9th of September, 1845, a further consignment of three additional cases. Each of the drafts was accompanied by a letter referring to consignments of cloths made or to be made by the defendants to the plaintiffs.   The goods consigned were all received by the plaintiffs by due course of transportation, and without any unreasonable delay.

The cause was referred; and upon the trial before the referee, the plaintiffs sought to recover upon proof of the payment of the drafts by them, and that they were drawn against the consignments aforesaid; without showing what disposition had been made of the cloths or what were their proceeds, or that they had rendered any account of such proceeds.

The referee reported in favor of the defendants, and the supreme court at general term in the fifth district denied a motion to set aside this report, and ordered judgment for the defendants.   The plaintiffs appealed to this court.

*J. A. Spencer* for the appellants.

I. The plaintiffs were accommodation acceptors. They had no funds in their hands when the drafts were drawn : all the drafts were drawn in the space of nine days, and were all at sight and paid as soon as received. A right of action immediately accrued on the payment of the drafts. ( *Stevens* v. *Wilson,* 6 *Hill,* 512; *Suydam* v. *Westfall,* 4 *Hill,* 211; *Chitty on Bills,* 595, *ed. of* 1839 ; *Luff* v. *Pope,* 5 *Hill,* 413; *Griffith* v. *Reed,* 21 *Wend.,* 502; 3 *Barb.,* 634; *Brink* v. *Dolsen,* 8 *Barb.,* 337.)

II. Where goods are consigned to a factor to sell on commission, the law will raise a contract on his part to account for such as are sold, to pay over the proceeds and re-deliver the residue unsold on demand, and an action does not lie against him, for not accounting, till after demand made of an account. ( *Topham* v. *Braddick,* 1 *Taunt.,* 571; *Ferris* v. *Paris,* 10 *John.,* 285 ; 1 *Espinasse Nisi Prius,* 210; *Cooley & Bangs* v. *Betts,* 24 *Wend.,* 203; 1 *Pet.,* 444; 7 *Cow.,* 328, 501; 2 *Hill,* 151, 2; *Dresser* v. *Ainsworth,* 9 *Barb.,* 619; *Livermore on Agency,* 457.)

III. By the usage of trade the consignee is to receive instructions as to the mode of remittance. ( 10 *John.,* 285.) The defendants should have proved that the goods had been sold. ( *Elbourn* v. *Upjohn,* 11 *Com. Law R.,* 476 ; *Leverick* v. *Meigs,* 1 *Cow.,* 645.)

IV. From the lapse of time in this case, it is to be presumed that the plaintiffs had accounted to the defendants for the sales of the goods. The defendants here should have shown that all the goods consigned had actually been sold. ( *Elbourn* v. *Upjohn,* 1 *Car. & Paine,* 572 ; 11 *Com. Law R.,* 476, *S. C.* )

V. The drawees, by their acceptance and payment of these bills of exchange, became bound to pay, whether they had funds in their hands or not. ( *Cowperthwaite* v. *Sheffield,* 3 *Comst.,* 243.) There is no direction given by the drawer

Gihon *against* Stanton.

of the bill as to the application of the proceeds. (*Same case.*)

C. H. *Doolittle* for the respondents.

I. The cloths were sent to the plaintiffs to be sold on commission ; and the money paid on the bills was an advance on account of the consignments in the ordinary course of business between principal and factor. The goods had been sold long before the action was brought. To entitle the plaintiffs to recover they should have proved an account of the sales of the goods. (*Montgomerie* v. *Ivers*, 17 *John.*, 38 ; *Corlies* v. *Cumming*, 6 *Cow.*, 181, 182, 184 ; *Clark* v. *Miller*, 4 *Wend.*, 628 ; *Cutting and Lord, arguendo*, 3 *Comst.*, 68 ; 2 *Sandf. S. C. R.*, 189 ; 7 *Bing.*, 217 ; *Chitty on Bills*, 348.) 1. The plaintiffs cannot recover on the drafts. The acceptance and payment are *prima facie* an admission of funds to that amount. (*Griffith* v. *Reed*, 21 *Wend.*, 502 ; *Suydam* v. *Westfall*, 4 *Hill*, 211 ; *Byles on Bills*, 100.) 2. The admission may be rebutted by showing that the drafts were accepted for the accommodation of the drawer ; but these drafts were not of that character. They were business and not accommodation paper. (*Cameron* v. *Chappell*, 24 *Wend.*, 94, *and cases.*) 3. It may also be rebutted by showing that property was not forwarded to be sold by the plaintiffs on commission as agreed ; but in this case a large amount of cloths was forwarded and delivered to the plaintiffs. 4. The property having been forwarded as agreed, the admission of funds implied by the acceptances can only be rebutted by the plaintiffs showing that upon a sale of the property, according to the usual course of business, the proceeds were insufficient to reimburse the advances. (*Cases above.*) 5. This is in accordance with the general principle that where a fact is peculiarly within the knowledge of one of the parties to a suit, the burden of showing how the fact is rests on him. (*Clark* v. *Miller, supra ;* 1 *Phil. Ev.*,

*Gould's ed.*, 198; 1 *Greenl. Ev.*, § 79.) 6. It is also in accordance with the rule that the obligation of proving any fact rests upon the party who, substantially, asserts the affirmative. Here the action is based upon the affirmative proposition that the property has been sold for an amount less than the aggregate amount of the drafts. The plaintiffs have failed to prove any such thing. ( *Greenl. Ev.*, § 74, *et seq.*)

II. The plaintiffs having failed to furnish proof, or even an account, of the actual sales, the defendants are entitled to be allowed the highest price which, according to the evidence in the case, the property would have sold for This would have more than covered the advances. ( *Clark* v. *Miller*, 4 *Wend.*, 628; see also *Blot* v. *Boiceau*, 3 *Comst.*, 84, 86.)

SELDEN, J. The decisions in relation to the somewhat complex rights, duties and obligations of principal and factor, are numerous; but very few of them have any direct bearing upon the point raised in this case. It would seem, from an examination of the long series of cases on this subject, that hardly any one had ever thought of contending that a factor or commission merchant, who, for the sake of inducing consignments to himself, makes advances to the consignor upon the faith of the goods consigned, and in anticipation of their avails, could, without rendering any account of the disposition of the goods, or of their proceeds, turn immediately around and sue for and recover back the amount of his advances. The question has arisen, whether advances of this kind are not made *prima facie* upon the *exclusive* credit of the property consigned; and whether the factor could without some special agreement to that effect resort to the personal responsibility of the principal at all, even for a deficiency. It is, however, settled that in the absence of any express agreement to look exclusively to the fund arising from the consigned property, the factor may have

recourse to the principal for the balance due after the fund is exhausted. (*Peisch* v. *Dickson*, 1 *Mason*, 9; *Burrill* v. *Phillips*, 1 *Gallis.*, 360.) In *Parker* v. *Brancker* (22 *Pick.*, 40), the supreme court of Massachusetts held that a commission merchant, having received goods to sell at a certain imited price, and made advances upon them, has a right to eimburse himself by selling them at a fair market price, hough below the limit, if the consignor has refused upon application and after reasonable time to repay the advances. From these cases it is strongly to be implied that the factor or commission merchant must first have recourse for reimbursement to the fund in his hands before resorting to his principal. That the credit, where a commission merchant makes advances upon consignments to him, is given primarily to the fund to be derived from the sale of the property consigned, would seem to result from the very nature of the transaction. The object of the consignor is not to borrow money, but to realize in advance some portion of the avails of his property. That of the consignee is not to make a loan of money for the accommodation of the consignor, or for the sake of the interest, but to increase the profits of his business, which depend upon the amount of consignments he can secure. He frequently knows little or nothing of the personal responsibility of the consignor, and must of course rely upon the property as his security. The lien which the law gives him for his advances upon the goods consigned from the moment of their shipment, and which it protects by the most stringent rules, affords of itself some evidence that he is regarded as having made the advance primarily upon the credit of the goods.

It was held by this court, in the case of *Marfield* v. *Goodhue* (3 *Comst.*, 62), that a factor who has made advances upon goods after their receipt by him, may proceed to sell, notwithstanding instructions from his principal to the contrary, provided the latter, after reasonable notice, fail to repay his advances; and in the case of *Brown* v. *McGran* (14

*Pet.*, 479) the supreme court of the United States held that the party under such circumstances might sell in defiance of his instructions, without even calling upon the principal for reimbursement. In both these cases, one ground upon which the right of the factor to sell was urged was, that he was compelled to look to the goods as the primary fund for the repayment of his advances, and could not resort to the principal until that was exhausted ; and the cases contain no intimation in opposition to this argument.

The ground taken by the plaintiffs in this case is, that they are to be regarded as having accepted and paid the drafts for the mere accommodation of the defendants, and that a debt therefore was created, *eo instanti*, upon their payment, as for so much money lent to the defendants at their request. But this view is inconsistent with the facts. The arrangement was no more for the defendants' accommodation than for that of the plaintiffs. The advantage was mutual. The plaintiffs received a consideration for their advance in the consignment made to them. They cannot therefore be regarded as mere accommodation acceptors.

Again, the commercial language universally applied to such a transaction goes to refute the ground taken by the plaintiffs. It is called an advance. An advance is something which precedes ; and of course there is something to follow. As applied to the payment of money, the term implies that the parties look forward to a time when the money will be due to the recipient. A debtor who voluntarily pays his debt before it is due is said to advance it. Can he recover it back ? An advance by a factor is a transaction somewhat similar. It is a prepayment ; a mere anticipation of the avails of the goods consigned ; and no more creates a debt in the first instance, than an advancement of a father to his son, in anticipation of his expected inheritance, creates a debt. It is true, that if the property proves insufficient to reimburse the factor for his advances, the law, in the absence of

any agreement to the contrary, implies an undertaking to make up the deficiency. But even this has been doubted, as I have already shown.

I am prepared, therefore, to concur in the decision of the superior court of the city of New-York, in the case of *Mottram* v. *Mills* (2. *Sandf.*, 189), where it was held that a consignee who accepts and pays a bill of exchange upon the faith of property consigned to him, cannot be regarded in any sense as an accommodation acceptor; and that he must show the proceeds of the property to be insufficient to meet the bills, before he can call upon the drawer for reimbursement.

The judgment of the supreme court must be affirmed.

RUGGLES, PARKER, ALLEN and EDWARDS, Js., concurred in the foregoing opinion.

GARDINER, Ch. J.; and JOHNSON, J., dissented.

DENIO, J., having been counsel in the case, took no part the decision.

Judgment affirmed.