By the Court:

Jones, J.
The general rule is, that a lienor may, the moment the demand for which he holds the lien becomes due, bring an action thereon, without first having recourse to the property on wdiich he has a lien (Cross on Liens, p. 69).
In such action he would make a grima faoie case for a recovery by proving his demand.
If, however, before action brought, he had wrongfully eonverted the property on which he had the lien, the defendant, if he remained the owner of the property, might offset or recoup the value of the property so converted (Stearns v. Marsh, 4 Denio, p. 227; Edwards on Bailments, p. 213).
It is conceded in this case that plaintiffs were defendant’s agents to purchase the corn, under an agreement that they were themselves to pay the purchase-moneys to the vendor in the first instance, and then call on defendant for repayment; and that they, having so paid the purchase-money, had a lien on the corn therefor. This being so, then, under the above principles, the . plaintiffs, unless they were bound to resort for their repayment to the corn in the first instance, were entitled to bring an action at once to recover the sum paid by them, and their charges and commissions, and to recover in that action the full amount thereof, upon proof of having bought the corn and paid therefor pur *631 suant to the defendant’s instructions, and of the amount of such their payments, charges, and commissions.
If, however, the plaintiff had wrongfully, and without any authority, sold the corn, the defendant might set up as a defence by way of counterclaim, the fact of such unauthorized sale, and ask to set off the value of the corn against the plaintiffs’ demand.
But this would be an affirmative defence, and the defendant would be called on to sustain it by affirmative proof. He would be bound to prove not only the unauthorized sale but the value of the corn.
.Ho such counterclaim is set up in the answer, and there is no proof of the value of the corn either at the time of or subsequent to its sale by plaintiffs, other than such as is furnished by plaintiffs’ admission of what it brought on its resale, which is less than plaintiffs’ demand; and, consequently, plaintiffs, if they have proved their demand, and are not obliged to have recourse to the corn in the first instance, are entitled to recover the amount of their demand, less the credit they have voluntarily given.
First, then, were plaintiffs bound, in the first instance, to resort to the corn \
For if they were, then, in addition to proving the contract, their compliance therewith, and the amount of their commissions and charges, and the amount paid by them in the purchase, they would have to prove a proper sale by them, and the amount realized from such sale, 'in order to enable them to recover.
It is. claimed that a factor to sell is bound, in the first instance, to resort for repayment of his advances to the consignee of the consigned goods, and can only hold the consignor personally liable for the difference between the advances and the sum produced by a sale of the. consigned goods, and that the burden of proving the amount of that difference rests on the factor; and it is further claimed that the same doctrine is applicable to an agent to purchase.
The doctrine in relation to factors to sell is properly laid down.
In Gibson v. Stanton (9 N. Y., 476), the action was assumpsit, *632 brought to recover money paid on four drafts, drawn by defendants on plaintiffs, and paid by plaintiffs. The plaintiffs were commission merchants, and'defendant consigned to them goods to he sold on commission, of which consignment defendant notified plaintiffs by letters, accompanying the said drafts.
The cause was tried before a- referee. On the trial plaintiffs sought to recover, upon proof of the payment of the drafts by them, and that they were drawn against the consignments aforesaid, without showing what disposition had been made of the goods, or what were their proceeds, or that they had rendered any account of such proceeds. The referee reported in favor of defendants. From the judgment entered on that report plaintiffs appealed to the General Term, where it was affirmed; on appeal taken to the Court of Appeals, that court affirmed the judgment below.
. The decision necessarily proceeded upon the following propositions :
1. That a factor for sale, has a lien for his advances on the goods consigned to him.
2. That he must exhaust that lien before he can resort to the personal responsibility of his principal.
Consequently, we see that those propositions are laid down in the opinion of the court; and the case is a direct adjudication that the factor must show that he has exhausted the lien before he can sustain an action against his principal on account of his advances.
It results that such an action can only be sustained for the balance remaining due after exhausting the lien, and that the burden of proving what the balance is rests on the factor.
Whether this doctrine applies to an agent to purchase, or not, depends on the applicability of the principles on which it is founded.
The doctrine, as is well said in Corlies v. Widdifield (6 Cowen, 181), arises out of the very nature of the transaction.
The consignee, with power to sell, receives the proceeds of sale in the first instance, and is bound to account for and pay *633 over the same to the consignor. Now, says the consignor, I desire to use a portion of the anticipated proceeds of the sale at present, and wish you to pay me now a portion of what you will owe me when you sell the goods. This is the correct exposition of the word “ advance,” when used to indicate payments made by a consignor—with power to sell, to the consignor on account of the consignment, as is ably shown in the case of Gibson v. Stanton. It is, in fact, a prepayment on account of a debt anticipated by both parties to arise to that or a greater amount, from the consignor to the consignee, out of the performance by the consignee of a contract existing between them. It necessarily results that before the consignee can call on the consignor to pay back any portion of this prepayment, he must show the performance of this contract, and that his indebtedness arising thereout did not, as was anticipated, amount to the prepayment.
This principle is inapplicable to an agent to purchase. In such case there is no anticipated debt to become due from the agents to the principal, arising out of the sale of the goods by the agent, on account of which any prepayment can be called for or made; and consequently there is no debt the inadequateness of which, to absorb a prepayment, is necessary to be ascertained before any portions of a prepayment thereon can be recovered back. Again, there is no, anticipated fund t to come to such agent’s hands, to which the parties contemplate that he must first look for satisfaction of Ms advances; that would be in direct conflict with the nature of the transaction; it would be absurd for one to employ another to purchase goods and advance the purchase-money, with the view of having that other retain the goods and sell them to pay back to himself his advances, holding his principal for any deficiency, and paying over any surplus.
If there were such anticipated fund, the application of wMch was thus contemplated, the effect of the transaction would be the employment of one by another to purchase goods, and advance the purchase-money with the sole view of having such employe retain the goods, and sell them to pay back to himself his advances, holding his principal liable for any deficiency, and pay *634 over any surplus. The result of this would be that the principal would never obtain possession of the goods purchased for him, and the whole transaction would be simply one for the settlement and paying over of differences.
I therefore conclude that an agent to purchase is not bound to resort, in the first instance, to the goods purchased to obtain payment of the purchase-money advanced by him, but that his advance is a loan to the principal, he having a lien on the goods as collateral security.
. The next point for consideration, is: Have plaintiffs proved their demand ? It is claimed they have not.
(a) Because by their act they have rescinded the contract.
(b) Because they should have notified defendant of their purchase, and received directions from him before incurring the expense of storage and extra cartage.
(c) Because, as it is said, they have not proved how much they paid on the purchase of the corn, or for its cartage or storage.
The claim of a rescission is based on the act of plaintiffs in selling the corn, whereby they became unable to deliver it.
So far as the plaintiffs are concerned, this, under the evidence (whatever might be its effect if there were no proof on the subject), was not a rescission by them. The evidence is that they declined to assume the corn, and notified defendant that they would sell the corn tó reimburse themselves, and would not compromise with him except on full payment of every dollar they had lost.
This, instead of being a rescission, is a clear avowal of intention to hold defendant hable for his breach of the contract which had already occurred.
" Nor can defendant, on his own part, rescind the contract for this act of the plaintiffs; he had broken his contract, had refused -to pay plaintiffs the amount of their demand, and to receive the corn. A cause of action had already arisen in favor of plaintiffs for such breach, and he cannot discharge that cause of action by rescinding a contract, already broken by him, on account of .a subsequent act done by plaintiffs, which resulted from his own *635 breach. What might be his rights in case of a sale prior to a demand on him for payment it is unnecessary here to determine.
Under the evidence, plaintiffs were not to notify defendant of their purchases, but he was to call into their office every day and receive their reports. He did not call at their office, and therefore it was his own neglect if he did not receive immediate notice.
Although defendant had vessels at the place where the com was purchased, yet he did not notify plaintiffs of that fact or give them any directions concerning the corn; they were, therefore, justified in storing it.
Defendant agreed that the drafts of the firms at Baltimore and Alexandria should be a sufficient guarantee that the com was purchased, and that they would pay the face of the drafts: When the drafts were presented payment was refused, because storage receipts were not attached; the storage receipts were produced, then payment was refused on different objections ; finally, defendant promised to pay if the corn was in good merchantable order. The corn was proved to have been in good merchantable order. Defendant had also been informed of the quantity of corn purchased and the prices paid for it, and had also been shown the invoices. During the negotiations for a settlement of the controversy, although defendant endeavored to get plaintiff to throw off the commissions and storage, yet no objection was raised to the correctness of the charges for storage and commissions and for moneys paid for the corn. This was sufficient to authorize the jury to find an acquiescence by the defendant in the correctness of those charges shown on the invoices, especially in view of the fact that, by his agreement, he in effect stipulated that the drafts of the houses in Baltimore and Alexandria should be evidence of the purchase of the corn, and of the price paid for it, which stipulation seems by the proof to have been one of the considerations upon which plaintiffs entered into the contract.
■ The plaintiffs then, having sufficiently proved their demand, and not being obliged to resort, in the first instance, to the corn itself or its proceeds, were improperly nonsuited.
*636 It may be suggested that they have brought their action on the theory that they were obliged to resort to the corn in the first im stance, and could only hold defendant for the balance remaining due after application of the proceeds of the corn, and can, there- > fore, recover on that theory only.
It is true they allege in this complaint that they did sell the corn, and the sum they obtained for it, and that it was less than the sum due them, and demand judgment for the difference between the two sums..
These allegations are wholly unnecessary to the cause of action contained in the complaint. They amount simply to giving a credit on the amount which would otherwise be due them, and' showing how that credit was produced. The giving a credit and showing how it was produced does not change the cause of .action.
It will be observed that the question as to the right of an agent to purchase, who has paid the purchase-money, in the first instance, to sell for his reimbursement, after demand for repayment, without giving notice of the time and place of sale, and bind the principal by the result of such sale, has not been discussed. That question does not arise in the case as now presente^.
If the defendant should amend his answer setting forth such a sale by the plaintiffs, alleging the value of the corn, and seeking to counterclaim such value, then the question would arise ; or, perhaps it might be raised under the present pleadings by an offer to prove the actual value, though that is exceedingly doubtful-
As the testimony now stands, however, it is not raised, for even conceding that the defendant may, under the present pleadings, claim that the sale, admitted in the complaint, was a wrongful conversion of the com, yet there is no proof of its value at that' time Or subsequently, other than the admission in the pleadings as to its proceeds on such sale (Story on Agency, p. 371), and for these proceeds plaintiffs have already given credit in their complaint.
Judgment reversed, and new trial ordered, with costs to the appellant to abide event.