By the Court.—-Curtis, J.
The plaintiff, a bank
in Montreal discounted the draft at the drawers’ request in the ordinary course of business, paying them the face thereof, less interest and one eighth per cent, commission. The draft was drawn against consignments of produce by the drawers to the defendants for sale.
The defendants on April 8, 1874, telegraphed from Hew York to the drawers, Hlven & Co., in Montreal, that they would accept three, thousand currency on usual time. Their previous transactions of the same kind had been on thirty days’ time. The draft in suit was so drawn. The telegram was an unconditional promise in writing to accept the bill before it was drawn, and it is by statute made an actual acceptance *20 in favor of the party, who upon the faith thereof receives it for a valuable consideration (2 R. S. 768, § 8).
This telegram was produced and given to the plaintiff* when the draft was discounted. The writing and sending of it by the defendants was proved on the trial. The statute requires the promise to be in writing, but is silent as to the mode of communicating it to the party cashing the draft upon the faith of it. When it is in writing and thus acted upon its mode of conveyance, whether by telegraph, mail, or otherwise affects no rights, and such effect must be given to it as manifest justice and the exigencies of commerce call for in this class of communications.
It appeared on the trial, by a stipulation on the párt of the plaintiff, that when the defendants refused to accept the draft in suit, there stood to the credit of Niven & Co., on the books of the bank, eight hundred and seventy-four dollars, gold, and that, in fact, the bank then held that amount to the credit of Niven & Co., and upon receipt of notice of non-acceptance, retained the gold so held, as security for the payment of the drafts; that, since the making of said draft, Niven & Co. have become bankrupt and insolvent, and that plaintiffs have, ever since, refused to pay over said sum, either to them or to their assignee in bankruptcy.
The value of this with interest was admitted to be on the day of the trial one thousand and fifty-seven dollars and eighty-eight cents.
The defendants excepted to the ruling of the court disallowing their claim, that this amount of gold in the hands of the plaintiff should be first applied on the draft. The ground of this claim by the defendants was that this draft was an over-draft, and if accepted and paid by them, they would be subjected to loss. The amount of this deficiency is not very clearly shown. Prom the correspondence it appears that *21 during the thirty days the draft- had to ran the defendants held and sold considerable amounts of produce that had been consigned to them by the drawers. The defendant Charles Ñ. Howard alone testifies on this point. It is as follows :
“ Q. On April 7, 1874, what was the state of the account or of the transactions between Niven & Co. and Howard & Co.?
“A. They had made shipments and drawn drafts against ns, and on March 7, or early in March, they made some drafts on shipments which we thought excessive.
“ Q. At the time of those drafts, had yon any funds ?
11 A. We had goods that were not realized upon ; as afterwards these goods were realized upon.
“Q. What would they net in your hands ?
“A. They would be worth nearly one-half of what this draft would be at the time'; I have not the figures exactly in my mind that were to the credit of Niven & Co.
“ Q. Had you any previous acceptances ?
“ A. We had; the result shows that we had something to apply on this draft; after we got through the accepted drafts, we bad something to his credit; on March 7, he made a draft, and I declined to accept it; but he said he would make further shipments, and I accepted them ; but on the 16th, not getting the account, I made a draft on him for three thousand dollars, which it seems they used.
“ Q. How much did your house have against the acceptances ?
“ A. I can not tell; I think about one thousand five hundred dollars, as against these acceptances; as soon as they got notice that I declined to accept, they stopped his account and reserved this amount, and they claim it to apply on this draft.”
This defendant has a supposition that his house, had *22 about fifteen hundred dollars against the acceptances, but as he does not or can not tell what funds or goods of the drawees they had, and says that he can not tell how much his house bad against the acceptances, it is not worth while to speculate as to what was the condition of the account, when the only party to it before the court does not know and can not state it with any reasonable certainty.
But even supposing there was evidence showing that, Niven & Co. were at that time indebted to the defendant, and what was the amount of it, there would still bo a- difficulty in this form of action, in which Niven & Co. are not parties, in undertaking to pass upon their account with the defendants, or adjudicate in respect to it in any way. Niven & Co.' have a right to be heard before such action can be taken. This courtwonld have to assume, in their absence, that they owed the defendants at least the amount of the value of the gold, and then to hold that this fact entitled the defendants to be credited with the value of the gold, so belonging to Niven & Co. or their assignee in bankruptcy, and upon which the plaintiff claim's a lien.
The cases of Door v. Shaw (4 Johns. Ch. 90); Cheeseborough v. Millard (1 Id. 412) ; N. Y. Ferry Co. v. N. J. Co. (Hopk. 460), and others cited on the part of the defendants are in support of the doctrine presented by Lord Eldon in Ex parte Kendall, (17 Ves. 590), to the effect, that if A has a right to go upon two funds and B upon one, having both the same debtor, and the funds are the property of the same person, A shall take payment from that fund to which he can resort exclusively, so that both may be paid. But it must be observed that in all these cases, all the parties in interest were brought before the court. All the facts bearing upon the rights-of each were allowed to be presented, and as in Averill v. Loncks (6 Barb. 480), the *23 court would not pass upon questions where this had not been done. Where parties go into equity for an administration of accounts, and securities, and liens, and to be substituted in the place of those holding col-laterals, on such terms as may be adjudged equitable, the rights of all parties may be protected. But this is very different from the present case.
If Niven & Co. or their assignee in bankruptcy had consented to the application of the gold to the payment of the draft in suit, it would apparently have inured to the defendants’ benefit, but it appears to be otherwise, and if the plaintiff can not hold it, as against the assignee under the bankrupt law of Canada, it might have to pay it again, though this court in this case where Niven & Co. are not parties, should hold that the defendant is entitled to be credited with its value.
It is desirable to avoid all such complications, and to embarrass the machinery of mercantile transactions with the fewest possible restrictions.
There seems to be no good reason why a plaintiff, discounting an acceptance because he received collateral security from the drawers, who are only contingently liable, should be deprived of his recovery against the acceptors, who are primarily liable, because of the state of the accounts between the acceptor and the drawer. The holder bona fide and for value of an acceptance before maturity in a suit against the acceptor is entitled to recover from the acceptor, without reference to equities between the original parties (Smith v. Van Sloan, 15 Wend. 659 ; Gtihon v. Stanton, 9 N. Y. 476 ; Marsh v. Oneida Bank 34 Barb. 298 ; Schepp v. Carpenter, 51 N. Y. 602; Johnson v. Clark, 12 Id. 218).
There was no question at the trial to submit to the jury, and the court properly directed the jury to find a verdict for the plaintiff.
*24 The judgment and order appealed from should be affirmed, with costs.
Sedgwick, J., concurred.