ERNEST LUCE *vs.* CONSOLIDATED UBERO PLANTATIONS COMPANY.

Suffolk.   November 26, 1906. — April 1, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Practice, Civil,* Auditor's report. *Contract,* Construction. *Evidence,* Extrinsic affecting writings. *Corporation. Agency.*

A finding of an auditor as to the proper construction of an instrument in writing, which is drawn inartificially and requires the admission of extrinsic evidence for its interpretation in its application to the facts and circumstances disclosed by the testimony before the auditor which he does not report, where the inter-

prétation adopted gives the natural meaning to the words used, cannot be held to be erroneous.

In a tripartite contract of settlement, in writing, between one who had acted as the agent for a corporation in a designated territory to sell its bonds for an agreed commission, another whom for a time he had taken as his partner in acting°as such agent and the corporation itself, an agreement by the agent that he "relinquishes all claims to any territory in which he has heretofore worked for the" corporation properly may be found by an auditor, in the light of facts and circumstances disclosed by testimony before him which he does not report, to have the natural meaning that the agent has no further right to work in the territory, and not to mean that he relinquishes all claims for commissions which he theretofore has earned in that territory.

In an action against a corporation for commissions for selling bonds of the defendant as its agent in a designated territory, including an item for expenses, a finding of an auditor that a certain person, who was the president of the defendant managing its business and who employed the plaintiff as its agent, agreed to pay the expenses named in this item himself or to take care of them, accompanied by evidence warranting a finding that the president was acting only as agent for the defendant, may be treated as a finding that the remark was uttered as such agent.

One, who had acted as the agent of a corporation in a designated territory to sell its bonds for an agreed commission, made an agreement of settlement with the corporation by which his agency was terminated and under which there was due to him a considerable sum of money for commissions previously earned. Shortly thereafter a new contract was made between this same person and the same corporation by which he was employed to go to a certain city and establish an agency for the sale of the bonds of the corporation in a new territory as well as to make preparations for the sale of the bonds of a new company of which he was to be the manager. A memorandum in writing of the agreement provided that the agent was to assume charge of the new territory described and to devote his entire time to it, and in consideration of such services the corporation agreed to advance to him the sum of $300 per month "to be charged against his commission account," and the further sum of $50 per week to cover necessary and proper travelling and other incidental expenses incident to the opening up of the territory, and that the agent was to receive in full compensation for his services fifteen per centum on the gross sales resulting from his individual effort and the difference in per cent between the gross rate and the amount agreed upon with such sub-agents as he might appoint. The memorandum continued as follows: "Both parties to this agreement understand that the expenses incidental to opening up so large a territory in the latter half of the proposition would hardly be warranted unless the territory could be utilized for further promotions, and it is the understanding between the parties to this agreement that in the event that the territory becomes profitable that" the president of the corporation "will execute in the future an agreement in behalf of one or more subsidiary companies to be hereafter organized, and that the said" agent "shall have charge of the territory as above enumerated, and to receive as full compensation therefor a commission of five (5) per centum on the gross amount of business done. This agreement shall not in any way bind the said" corporation or its president "to the execution of any agreement provided in one or in both of their judgments the territory be unprofitable. It is rather the purpose of this agreement to serve as a memorandum in order that the said" agent "may understand exactly the amount of funds which he may

draw and have charged against any future commissions which he may earn." The commissions earned under the new contract were less in amount than the advances, and the corporation claimed the right to set off the balance of the advances against the commissions earned by the agent under his former contract. *Held*, that the advances were to be paid only out of future commissions earned by the agent and not otherwise, and that any expense of the venture beyond the amount of the commissions earned by the agent under the new contract was to be borne by the corporation, and could not be set off against the commissions earned by the agent under his former contract.

CONTRACT for $3,576.83 upon an account annexed as follows:

1. Commissions earned to date of writ on sales of bonds in Luce-Sawyer territory up to Nov. 25, 1902, at 7½% . . $956.62
2. Commissions earned to date of writ on sales of bonds in Luce-Sawyer territory between Nov. 25, 1902, and Jan. 20, 1903 . . . . . . . . . . . . 822.00
3. Amount agreed to be credited May 16, 1903 . . . . . . . . . . . . 1,860.00
4. Amount of expenses agreed to be credited May 16, 1903 . . . . . . 352.60
5. Commissions earned to date of writ on sales of bonds by Luce personally . 1,068.00
6. Commissions on sales of bonds in Worcester department . . . . . 332.75
7. Commissions on sales of bonds in Worcester department . . . . . 49.50
                                                                $5,441.47
9. By cash received . . . . . . . 1,864.64
                                                                $3,576.83

Writ dated September 16, 1904.

The case was heard in the Superior Court by *Maynard*, J., without a jury. The defence was a general denial. The defendant also offered for filing at the time of the trial in the Superior Court and before the plaintiff opened his case a declaration in set-off for money lent, the first count being for $3,323.44 and interest and the second count being for $1,475 and interest. The judge reserved the question of the filing and allowance of the declaration in set-off until he should make his findings in

the case and subsequently in chambers allowed the declaration in set-off to be filed as of the day of trial.

The case was referred to Lewis G. Farmer, Esquire, as auditor. He made a report which is described in the opinion.   The only evidence introduced in the Superior Court was the auditor's report and two instruments, referred to in that report, which are printed below.

After the evidence was in, the defendant asked for the following rulings :

" 1.   There is no evidence to warrant a verdict for the plaintiff.

" 2.   A verdict should be directed for the defendant.

" 3.   There is no evidence to warrant a verdict for the first item of the plaintiff's amended declaration.

" 4.   There is no evidence to warrant a verdict for the second item of the plaintiff's amended declaration.

" 5.   There is no evidence to warrant a verdict for the fourth item of the plaintiff's amended declaration.

" 6.   By the contract between Luce-Sawyer and the defendant the plaintiff relinquished all his rights to commissions on bond sales made in the so-called Luce-Sawyer territory, both before and after January 20, 1903, and thus released all his rights to the sums mentioned in the first and second items of the plaintiff's declaration.   For these amounts he cannot recover.

" 7.   Defendant's declaration in set-off.   The amount advanced by the defendant to the plaintiff to be charged against his commission account while at Buffalo, was in the nature of a loan to him, and he having earned no commissions and having closed the business there and ended the connection with his Company, is bound to repay this amount to the defendant.   The defendant is therefore entitled to claim from the plaintiff the sum advanced on commissions account, $3,323.44.

" 8.   The amount advanced to the plaintiff to cover travelling expenses must be repaid to the defendant, except so far as used for the purposes specified by their agreement.   The auditor having decided that by the proper interpretation of the contract, it was not to be returned in any event, and no evidence being introduced of any expenditures on this account, the defendant is entitled to the total amount advanced for expenses, i. e. $1475."

All the rulings requested were refused by the judge, who found for the plaintiff in the sum of $3,855.82. The defendant alleged exceptions.

The two instruments referred to in the auditor's report and introduced in evidence before the judge were as follows :

" This agreement entered into by and between the Consolidated Ubero Plantations Company and G. Edwin Sawyer and Ernest Luce:

" Whereas all parties to this agreement agree that to settle certain disputes as between the crediting of commissions due the said Sawyer and said Luce under a contract of co-partnership, that it is agreed that in consideration of the payment to the said Ernest Luce of one hundred and forty (140) dollars in cash and the further crediting to his account of eighteen hundred and sixty (1860) dollars, that the said Luce relinquishes all claims to any territory in which he has heretofore worked for The Consolidated Company, and the said Sawyer agrees that the two thousand (2000) dollars, including the cash of one hundred and forty (140) dollars and the credit to Luce of the eighteen hundred and sixty (1860) dollars be charged to his account, and be paid to the said Luce as rapidly as the earnings of his entire commission account will warrant.

" It is further agreed that the said advance of one hundred and forty (140) dollars to Ernest Luce shall constitute a full payment for his interest or equity in the territory in which he has heretofore claimed to control, and it is the purpose of this agreement to transfer all this interest to The Consolidated Company. Both the said Luce and the said Sawyer acknowledge with the execution of this contract the receipt of service of dismissal from the employment of this Company, and any arrangement which the Company may hereafter enter into with either one or both of the said parties shall not be construed in any way as re-opening any of the commission accounts heretofore in controversy.

" The Consolidated Ubero Plantations Company.

"By F. E. Borges,

G. Edwin Sawyer,

Ernest Luce.

" Boston, Mass., May 16, 1903."

[Draft of agreement prepared by Borges in Buffalo matter.]

" This agreement entered into by and between The Consolidated Ubero Plantations Company, party of the first part, and Ernest Luce, party of the second part, Witnesseth :

" That whereas, The Consolidated Ubero Plantations Company desire to open up certain territory in the State of New York as follows :

| Office | Buffalo . . . . | Population | 353,000 ; |
|---|---|---|---|
| Branches | Erie, Pa. . . . | " | 53,000 ; |
| " | Dunkirk, N. Y. . | " | 12,000 ; |
| " | Niagara Falls . | " | 20,000 ; |
| " | Rochester . . . | " | 162,000 ; |
| " | Auburn . . . | " | 30,000 ; |
| " | Syracuse . . . | " | 108,000 ; |
| " | Utica . . . . | " | 56,000 ; |
| " | Schenectady . . | " | 31,000 ; |
| " | Amsterdam . . | " | 21,000 ; |
| " | Hornellsville . . | " | 12,000 ; |
| " | Elmira . . . . | " | 35,000 ; |
| " | Binghampton . | " | 40,000 ; |

" And whereas, The said Ernest Luce is to assume charge of territory above enumerated and is to devote his entire time thereto, and in consideration of such services The Consolidated Ubero Plantations Company agrees to advance the said Luce the sum of three hundred (300) dollars per month, to be charged against his commission account, and the Consolidated Company further agrees to advance the sum of fifty (50) dollars per week to cover necessary and proper travelling and other incidental expenses incident to the opening up of' said territory.   Said Luce is to receive in full compensation for his services the sum of fifteen (15) per centum on the gross sales resulting from his individual effort and the difference in per cent between the gross rate and the amount agreed upon with such sub-agents as the said Luce may appoint.   Both parties to this agreement understand that the expenses incidental to opening up so large a territory in the latter half of the proposition would hardly be warranted unless the territory could be utilized for further promotions, and it is the understanding between the parties to this

agreement that in the event that the territory becomes profitable that Ferdinand E. Borges will execute in the future an agreement in behalf of one or more subsidiary companies to be hereafter organized, and that the said Luce shall have charge of the territory as above enumerated, and to receive as full compensation therefor a commission of five (5) per centum on the gross amount of business done.

" This agreement shall not in any way bind the said The Consolidated Ubero Plantations Company or Ferdinand E. Borges to the execution of any agreement provided in one or in both of their judgments the territory be unprofitable. It is rather the purpose of this agreement to serve as a memorandum in order that the said Luce may understand exactly the amount of funds which he may draw and have charged against any future commissions which he may earn.

" The said Luce agrees to forward to the office of the Company daily a report of all work done in his territory, including names and addresses of such prospects as have been called upon. Upon the appointment of any sub-agent the said Luce is to immediately inform the office the rate. of commission agreed upon, and such commissions shall be paid to the sub-agent direct from the treasury of the Company. Said Luce is also to submit an itemized expense account at the end of each week.

" Boston, May 25, 1903."

The case was submitted on briefs.

*C. K. Cobb,* for the defendant.

*A. E. Burr,* for the plaintiff.

HAMMOND, J. This is an action upon an account annexed to recover a balance of commissions and expenses alleged to be due to the plaintiff on account of sales by himself and one Sawyer of the bonds of the defendant. The answer is a general denial. The defendant also filed a declaration in set-off.

The questions presented are whether the judge erred in allowing the first, second and fourth items of the declaration and in disallowing the first count of the declaration in set-off. The defendant waives the question as to the disallowance of the second count in set-off. At the trial in the Superior Court without a jury the evidence consisted of the report of the auditor who found for the plaintiff, and two exhibits.

It appeared from the auditor's report that the plaintiff was employed in 1902 by the defendant to sell its bonds upon commission. He had sold bonds for the defendant's predecessor. The defendant assigned to the plaintiff a certain territory within which he was to operate in selling the bonds at a commission of fifteen per cent. In May, 1902, the plaintiff made an arrangement with one Sawyer to sell bonds in a certain territory (which we assume was a part of the territory which had been assigned to the plaintiff by the defendant) called by the parties the Luce-Sawyer territory, by the terms of which the plaintiff was to have a half interest in the commissions from such sales. The auditor describes the arrangement with the defendant as to commission as follows : " These bonds were sold upon the instalment plan, a certain amount being paid by the purchaser at the time the bond was sold to him, and the balance being payable at fixed times in definite proportions. When a sale was made the agent who made it was credited on the company's books with the full amount of his commission, which, however, was not payable until the purchaser should have paid all the instalments, and in the event that all the instalments were not paid the agent was entitled to his commissions only upon the amount of those which were actually paid. He thus had upon making sale of a bond a species of vested interest in the commission thereon, dependent in amount upon the sums subsequently paid by the purchaser."

1. As to the items 1 and 2 of the declaration. The first is for " commissions earned to date of writ on sales of bonds in Luce-Sawyer territory up to Nov. 25, 1902, at $7\frac{1}{2}\%$," and the second is for similar commissions on sales of bonds between November 25, 1902, and January 20, 1903. The auditor has found that these commissions were due at the date of the writ. That finding must stand unless the plaintiff is barred by the agreement of May 16, 1903, which is set forth in one of the exhibits above mentioned. The circumstances under which that agreement was signed are thus described by the auditor :

" In November or December, 1902, the plaintiff and Sawyer had a misunderstanding in regard to their contract, which was not settled until May 16, 1903, after a conference between themselves and Mr. Borges, the president of the company, at which the agreement in writing hereinafter detailed was entered into

by all three of them. Sawyer claimed that January 1st, 1903, should be taken as the date up to which the accounts should be figured, but January 20 was finally agreed upon. Up to November 25, 1902, when Sawyer gave notice to the company that the arrangement between the plaintiff and himself was no longer in force, certain commissions had been earned on sales of bonds in the so-called ' Luce-Sawyer ' territory, in which the plaintiff had a vested interest, and his share of which amounted on September 20, 1904, when this action was brought, to $956.62, being Item 1 of the account annexed to his amended declaration. Between November 25, 1902, and January 20, 1903, other sales had been made in that territory, and the plaintiff's share of the commissions earned thereon amounted on September 20, 1904, to $822, being Item 2 of the account. His commissions on his personal sales of bonds in his own territory in which Sawyer had no interest amounted on that date to $1,068, which is admitted to be due him unless offset by payments made to him by the defendant during his employment at Buffalo to be spoken of hereafter, and with which the defendant claims he should be charged. Further, Sawyer had sold in the ' Luce-Sawyer ' territory between January 20 and May 16, two hundred bonds, the commission on which, if the instalments should be fully paid, would amount to a very large sum, in which the plaintiff would have a half interest upon the basis of his original agreement with Sawyer. Now on all these commission accounts, except on those earned by the plaintiff personally, the amounts actually earned and due on May 16, 1903, were comparatively small, much smaller in fact than the sums claimed in the account, though the full amounts had been credited on the books according to the custom above stated. The books showed also a debit by the plaintiff to the company of about $1,700."

The defendant contended, and asked the judge to rule, that by that agreement the plaintiff relinquished all his right to a commission on bond sales made in the Luce-Sawyer territory, " both before and after Jan. 20, 1903." The plaintiff contended and the auditor found that the plaintiff relinquished only his claim to any share of commissions earned on sales made after January 20, 1903. The trial judge followed the auditor.

In the light of the circumstances detailed by the auditor, and

of the respective contentions of the parties, we proceed to the consideration of the agreement. It is tripartite, the parties being the defendant, Sawyer and the plaintiff. The first paragraph relates to the settlement of " certain disputes as between the crediting of commissions due the said Sawyer and said Luce under a contract of co-partnership." The nature of the disputes does not appear. All that appears by the report is that in November or December, 1902, the plaintiff and Sawyer " had a misunderstanding in regard to their contract, which was not settled until " this agreement was made. The agreement sets out that Luce is to receive $140 " in cash and the further crediting to his account of " $1,860, and Sawyer agrees that this $2,000 shall " be charged to his account, and be paid to the said Luce as rapidly as the earnings of his entire commission account will warrant." In other words Sawyer agrees that $2,000, which, according to the defendant's books, would have been otherwise payable to him, shall be paid to Luce. In consideration of this, Luce " relinquishes all claims to any territory in which he has heretofore worked " for the defendant ; and in the next paragraph " it is further agreed that the said advance of $140 to Ernest Luce shall constitute a full payment for his interest or equity in the territory in which he has heretofore claimed to control, and it is the purpose of this agreement to transfer all this interest to " the defendant. The purpose of the agreement was evidently twofold : first, to settle the disputes between Luce and Sawyer as to commissions due them respectively under their " contract of co-partnership," and second, to get a transfer to the defendant of the plaintiff's " interest in equity to the territory " which he had theretofore claimed to control. And the agreement ends with the statement that both the plaintiff and Sawyer " acknowledge with the execution of this contract the receipt of service of dismissal from the employment of . . . [the defendant] . . . and any arrangement which . . . [the defendant] . . . may hereafter enter into with either one or both of the said parties shall not be construed in any way as re-opening any of the commission accounts heretofore in controversy."

In addition to the dismissal of the plaintiff and Sawyer from the employment of the company, two things were accomplished by the agreement, namely, the allotment of territory to the plain-

tiff was cancelled, and the commission accounts were settled so that they were not to be reopened. Now what were the "accounts heretofore in controversy"? Those were settled, and only those. Three kinds of commission accounts were then standing: First, the account for commission under the contract of copartnership for bonds sold before November 25, 1902; second, the account for commission under the same contract for bonds sold before the time of settlement, and third, the account for commission for bonds sold by the plaintiff on his own individual account. With the first two Sawyer was concerned; with the last he was not. If, as is contended by the defendant, the relinquishment by Luce of all claims to territory means the relinquishment of claims to commissions earned in that territory, then to be logical it must be held that the plaintiff has given up the third class of commissions, namely, those on bonds sold by him individually. But the defendant does not contend that this third class has been given up by the plaintiff. If on the other hand, as contended by the plaintiff, the phrase "relinquishes all claims to any territory" has no reference to commissions but means simply what it says, namely, that the plaintiff has no further right to work in the territory, then there is nothing upon the face of the agreement to show why the plaintiff in his claim for commissions stops with those earned up to January 20, 1903. And yet the auditor finds that his right to commissions does stop there, and the plaintiff does not contend that that interpretation is erroneous.

The truth is that the agreement is inartificially drawn and does not describe the nature of the disputes to be settled. The auditor properly and without objection heard evidence of the circumstances and conditions under which the agreement was made. He has found upon the evidence before him that it was the intention of the parties that the plaintiff should "relinquish any and all claim to any share of the commissions earned on sales made in said [Luce-Sawyer] territory after January 20, and retain his vested interest in the commissions on the sales which had been made prior to that date." Such a finding is a construction of the instrument in its application to the facts and circumstances disclosed by the testimony before him. The evidence upon which the finding is made not being reported, we

cannot say that it was erroneous.   The result is that the judge rightly refused to give the first four and the sixth rulings requested by the defendant.

2. As to the fourth item.   Upon the finding of the auditor that Borges agreed to pay the expenses named in this item himself or would take care of them, this item must stand.   It is argued that Borges, in saying this, was not acting for the defendant, but we do not think that that is the fair interpretation of the auditor's statement.   The judge was warranted in finding that Borges was acting only as agent for the company, and that this remark was uttered in that capacity.   The fifth request was properly refused.

3. As to the claim set out in the first count of the declaration in set-off.   Upon this the auditor reports as follows :

" With regard to the Buffalo matter, I find the facts to be that after the plaintiff was discharged on May 16, 1903, he was at once re-employed to go to that city and establish an agency for the sale of the company's bonds as well as to make preparations for the sale of the bonds of a new company, of which he was to be the manager.   The terms of his employment were set forth in a draft of a contract prepared by Mr. Borges and submitted to the plaintiff for his approval.   Certain alterations were made in it and minuted in lead pencil on the margin, and the paper was then placed in the hands of a stenographer in the defendant's employ with instructions to put the same in shape for execution.   Some delay occurred and the plaintiff being in haste to leave for Buffalo went away without seeing the final draft of the agreement, and, in fact, never saw it at all, until the hearing before me when it was produced by Mr. Borges. . . . It was used by Mr. Borges in giving his testimony as to what the contract was, and I find that the terms thereof were substantially the same as contained in the paper.

" It was therein set forth that whereas the company desired to open up certain specified territory in the State of New York, including the city of Buffalo, and the plaintiff was to assume charge of the same and to devote his entire time thereto, the company, in consideration of such services, agreed to advance him the sum of $300 per month, to be charged against his commission account, and $50 per week to cover ' necessary and

proper traveling and other incidental expenses incident to the opening up of said territory.' The plaintiff was to receive in full compensation for his services fifteen per cent on the gross sales resulting from his individual efforts, and the difference in per cent between the gross rate and the amount agreed upon with such sub-agents as he might appoint. It was then recited as follows: 'Both parties to this agreement understand that the expenses incidental to opening up so large a territory in the latter half of the proposition would hardly be warranted unless the territory could be utilized for further promotion, and it is the understanding between the parties to this agreement that in the event that the territory becomes profitable . . . Ferdinand E. Borges will execute in the future an agreement in behalf of one or more subsidiary companies to be hereafter organized, and that the said Luce shall have charge of the territory as above enumerated, and to receive as full compensation therefor a commission of five per centum on the gross amount of business done.' It was also provided that the agreement should not in any way bind the company or Mr. Borges to the execution of any agreement, provided, in one or both of their judgments, the territory be unprofitable, and that it was rather its purpose to serve as a memorandum in order that the plaintiff might understand exactly the amount of funds which he might draw and have charged against any future commissions which he might earn."

This was an entirely new arrangement, and we think it plain that the " future commissions which he [the plaintiff] might earn " against which the advances of $300 a month were to be made by the defendant to the plaintiff, were future commissions to be earned under this new contract, and not commissions for bonds already sold under the former contract which had been ended by the agreement of May, 1903. It does not appear what, if any, commissions the plaintiff earned under this new contract. But it may be assumed that they were less in amount than the advances. Therefore the method which the contract provided for the collection from the plaintiff of the advances made to him by the defendant is not available.

The defendant however strongly urges that by the true interpretation of the contract the sums thus advanced were to be paid back in any event by the plaintiff. But we think that position

untenable. At the time the contract was made there was due to the plaintiff a considerable sum of money for commissions earned under a previous contract. The new contract provided for the opening of a new territory. If it had been the intention of the parties that the advances were to be made at the expense of the plaintiff, to be refunded by him in any event, then there was no reason for the provision that they should be charged against future commissions. Construing the contract in the light of the circumstances, we are of opinion that these advances were made with the understanding that the defendant was to look alone to the fund named in the contract for their repayment. The defendant's seventh request was therefore rightly refused. The defendant waives its exception to the refusal to give the eighth request.

*Exceptions overruled.*