**James Nelson, Appellee, v. American Business Bureau, Appellant.**

**Gen. No. 30,720.**

1. CONTRACTS—*provision in contract of employment for payment of advances to be charged against expected commissions as one for salary.* Where an applicant's proposition to his intended employer stated: "I am to be granted weekly advances of not to exceed $250 until such time as my commissions shall exceed any possible over-

Nelson v. American Business Bureau, 241 Ill. App. 432.

draft," etc., and the employer's written acceptance of such proposition referred to such advances as "salary" and after the commencement of service in accordance with the proposition and acceptance the employer made weekly payments to the employee, at his request, equivalent to the stipulated maximum advance, the practical effect of the agreement was to provide for a salary of the stated amounts, to be advanced by the employer and charged against commissions to be thereafter earned.

2.  CONTRACTS—*personal liability of employee to repay employer amounts of advances made in anticipation of commissions to be earned.* In the absence of an express provision, in a contract of employment covering sales to be made on a commission basis, obligating the employee to pay back advances made in anticipation of commissions to be earned, or of words showing that such employee assumes personal liability to repay the same, such advancements are not to be deemed loans and the employee does not become personally liable to repay the same, although he fails to earn the expected commissions.

3.  ACCORD AND SATISFACTION—*sufficiency of evidence to show settlement of controversy as to amount due under contract of employment at time of payment of portion of employee's demand.* In an action upon a contract of employment a finding that no settlement of the controversy between the parties touching the amount due to the employee was made at the time when payment was made of a portion of the employee's demand, held not manifestly against the weight of the evidence.

4.  CONTRACTS—*sufficiency of evidence to show election by employee relieving him of obligation to accept and pay for stock of employer pursuant to terms of contract of employment.* Under a contract of employment providing for the purchase by the employee of stock of the employer, but further providing that in the event the parties became disassociated prior to the date set for the completion of payments for such stock, the employer would, at the election of the employee, take back such stock at the purchase price plus interest, evidence that no stock was in fact offered or delivered by the employer prior to the termination of the employment, which occurred prior to the date aforesaid, and that upon the termination of such employment the employee informed the employer that he did not wish to receive the stock, held to show an election by the employee relieving him of any obligation in respect of such stock.

Appeal by defendant from the Municipal Court of Chicago; the Hon. C. F. McKINLEY, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Affirmed. Opinion filed July 13, 1926.

Harry H. Felgar and A. Philip Smith, for appellant.

Clarence A. Samuel, for appellee.

Mr. Justice Fitch delivered the opinion of the court.

This suit was brought to recover the amount claimed to be due to the plaintiff under the terms of a written contract with defendant by which plaintiff was employed to organize and direct a sales department for defendant and was to receive for his services and expenses a commission of 15 per cent on the gross amount of all sales, with stipulated weekly advances. Defendant's affidavit of merits denied that plaintiff performed his part of the contract and claimed that defendant had advanced to plaintiff more than the amount of his commissions as fixed by the contract. Defendant also filed a set-off for the amount alleged by it to have been overpaid, and for $10,000, which defendant claimed to be due upon plaintiff's promise to buy certain stock of the defendant company. Upon a trial before the court without a jury, the issues were found in plaintiff's favor and from a judgment entered thereon defendant appealed.

Defendant was incorporated in January, 1925. Its business was the selling of a course of instruction in accounting by correspondence. Several months prior to the incorporation, at the request of the incorporators, plaintiff went to Rockford, Illinois, to discuss the question as to his engagement as sales director for the proposed corporation, and on December 2, 1924, plaintiff attended a meeting of the incorporators in Rockford, where the plan and scope of the proposed corporation were discussed, and plaintiff was requested to submit a proposition in writing. A week later plaintiff submitted a written statement of his plan for the organization of a sales department. He

proposed, in this statement, to construct a sales organization consisting of 276 persons, headed by himself as "general field director." He gave a detailed estimate of the results which he stated he believed could be expected from such an organization "in the way of enrollments and sales" for the first six months. His proposition mentioned the prices at which "enrollments" were to be sold, and stated that the total sales department expense should not exceed 50 per cent of the gross sales, such expense to be "budgeted" and to include plaintiff's commission of 15 per cent on all sales for his services. He agreed to give his entire time and efforts, and out of his commissions to pay for certain advertising, office rent, clerk hire, stamps, and office supplies for branch sales offices. He also asked to be "permitted" to subscribe for 100 shares of the common stock, at $50 each, and 100 shares of the preferred stock, at $50 each, payable one-fourth on February 1, 1925, and the balance not later than August 1, 1925. The part of his proposition relating to advances was as follows:

"Third. I am to be granted weekly advances of not to exceed $250 until such time as my commissions shall exceed any possible overdraft, at which time settlement is to be made weekly. During the period prior to February 1, 1925, at which time you expect to be ready for the drive, and during which time I will be busy getting up kits and other sales data, I will only need $100 per week to cover my initial sales as well as living expenses."

The incorporating committee replied, in writing, accepting plaintiff's plan and proposal, with certain specified "reservations and exceptions," one of which was to make the contract subject to cancellation upon 30 days' written notice by either party. The proposed commission of 15 per cent for plaintiff's services was accepted without reservation. The portion of plain-

tiff's proposition above quoted, beginning "Third," was accepted in the following language:

"7. Your statement under caption 'Third,' pages 3 and 4, is accepted except that the dates therein are changed to indicate the beginning of your contract with the Bureau as January 1, 1925, and the change in salary from $100 per week to $250 per week is to start February 1, 1925."

As soon as defendant was incorporated, the agreement thus made between plaintiff and the incorporators was expressly ratified and approved by the corporation.

Pursuant to this contract, plaintiff proceeded to form a selling organization and gave to that work his whole time and attention. During the month of January, 1925, weekly advances were made to him at the rate of $100 a week, and during February, March and April, he received eleven checks of $250 each. The number of sales effected by his organization, however, fell far short of the number expected, and on May 5, 1925, defendant gave plaintiff a 30 days' notice in writing of the termination of the contract, stating therein that defendant would not "honor any further obligations or expenses" and would make no further advances to the plaintiff. Plaintiff insisted that the amount then due him for "weekly advances" was $750 and demanded payment. Three days later, at plaintiff's request, a meeting was held, which resulted in plaintiff being given a check for $500 and instructed to "go ahead and do his best with the lecture tours" he had been making. Plaintiff's evidence tends to prove that he followed these instructions until the expiration of the 30 days mentioned in the cancellation notice.

The main controversy between the parties turns on the construction to be given to the above-quoted provisions of the contract regarding advances. Defendant insists that the agreement does not obligate the

defendant to advance any definite amount, but merely requires it to make weekly advances of "not to exceed" $250 per week. It is argued that this provision authorized defendant to determine the amount it would advance each week, and gave no right to plaintiff to demand $250 a week. This argument overlooks the language used in the remainder of the sentence in which the words "not to exceed" are found. The beginning of the sentence is: *"I am to be granted* weekly advances of not to exceed $250," etc. The word "granted" is here used in its common acceptation of something given or allowed in response to a request; and the whole sentence clearly implies that plaintiff's requests for advances of not more than $250 a week are to be allowed and paid by the defendant. As between parties to a contract like the one under consideration, the word "advances" does not necessarily imply a loan. (*Northwestern Mut. Life Ins. Co. v. Mooney,* 108 N. Y. 118.) It means "payments made in anticipation of expected commissions." (*Arbaugh v. Shockney,* 34 Ind. App. 268.) Giving the words used their ordinary meaning, and one which appears to have been the meaning contemplated and acted upon by the parties themselves, the clause quoted clearly means that plaintiff was entitled to receive weekly payments, in anticipation of expected commissions, of such amounts, not exceeding $250 a week, as he might request. This construction gives effect to all the language employed in the contract and is the only construction that will do so. Moreover, defendant's present contention is inconsistent with the letter of acceptance, which refers to the "change *in salary* from $100 a week to $250 per week," starting February 1, 1925. While such advances are not, strictly speaking, to be considered as salary, yet as plaintiff's proposal was that he should be given the privilege of drawing in advance not to exceed $250 a week, and as that proposition was accepted by the

defendant, and acted upon by it in the manner stated for nearly four months, the practical effect of the agreement was to provide for a salary of the stipulated amounts, to be advanced by defendant and charged to commissions to be thereafter earned.

Defendant insists that a settlement of the controversy was made when plaintiff was paid $500 in May, 1925. Much of the argument of counsel is devoted to a discussion of this contention, although we fail to find any mention of such a defense in defendant's affidavit of merits. In any event, however, the question is one of fact, and we are unable to say that the conclusion of the trial judge is manifestly against the weight of the evidence.

It is finally urged that defendant's set-off should have been allowed. The rule is fairly well settled that in the absence of any express agreement, in such a contract, to pay back the amounts advanced to an employee in anticipation of expected commissions, or of words showing that he assumed a personal liability to repay the same, the advancements are not to be treated as loans, and the employee does not become personally liable for the repayment thereof. (*Northwestern Mut. Life Ins. Co. v. Mooney, supra; L. J. Wing Mfg. Co. v. Thompson,* 120 N. Y. Supp. 51; *Luce v. Consolidated U. P. Co.,* 195 Mass. 84; *Arbaugh v. Shockney, supra; Felsenthal Bros. & Co. v. Gradwohl,* 217 Ill. App. 170.) As to defendant's claim to be paid for the 200 shares of stock, the contract provides that if plaintiff and defendant shall "become disassociated," for any reason, prior to August 1, 1925, "it shall be the duty" of defendant, if plaintiff shall so elect, "to take back all of my holdings of stock at the original purchase price plus interest." It does not appear that any stock was ever in fact delivered or offered by defendant to plaintiff, and it would avail the defendant nothing to require plaintiff to pay for it now, since defendant, under the contract, would be

at once required to repay the amount to the plaintiff with interest. The law does not require the performance of useless acts. It appears from the record that plaintiff notified the defendant, through one of its officers, before August 1, 1925, that he did not want the stock after the parties were "disassociated," and was told that under the circumstances defendant did not want him to have the stock. This was a sufficient election under the circumstances.

Many alleged errors are assigned in general terms, both on the record and in the brief of defendant's counsel, but the foregoing covers in substance those which are argued.

The judgment is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.