## ARBAUGH ET AL. *v.* SHOCKNEY.

[No. 4,676. Filed May 31, 1904. Rehearing denied December 13, 1904.]

1. CONTRACTS.—*Soliciting Insurance.—Commission.*—Where plaintiff contracted to employ defendant to solicit life insurance, and to pay him for his services a certain commission on all premiums collected and paid over upon insurance secured by him, and that all money or notes received by defendant should constitute a fiduciary trust, to be paid over to plaintiff at the plaintiff's option, the only compensation to which defendant was entitled was the commission provided. p. 272.

2. SAME.—*Soliciting Insurance.—Expenses.—Advancements.*—Where plaintiff contracted to employ defendant to solicit insurance and to pay him therefor a certain commission, and also to advance money, not to exceed $15 per week, for current expenses, the same to be retained out of and be a first lien on defendant's commission on premiums secured by him, and the contract further provided that defendant should turn over all premiums until his commissions should equal such advancements, and the bond, executed as security by defendant, provided that defendant should pay over to plaintiff all moneys payable in any event on account of the advancements made to him, such contract provides compensation only to the amount of commissions and does not include the $15 per week in addition. p. 272.

3. SAME.—*Repudiation.—Right of Party Repudiating.*—Where the plaintiff employed defendant to solicit insurance for a certain commission, and agreed to advance to defendant, for current expenses, not to exceed $15 per week, such advancements to be deducted from commissions, and the plaintiff after making some advancements refused to make any further advancements unless defendant would

execute a new contract, such refusal constituted a repudiation of such contract and justified defendant in quitting such employment, and the plaintiff's repudiation precludes any recovery by him on such contract.   p. 273.

4.   CONTRACTS.—*Advancements.*—*Collection.*—Where a contract provided that plaintiff should "advance" to defendant not to exceed $15 per week for current expenses, such amount to be a first lien and payable out of commissions which should become due to the defendant, such "advancement" did not constitute a personal liability, since there is no provision requiring the defendant to pay such sums.   p. 275.

5.   SAME.—*Advancements.*—*Obligation for Repayment.*—*Implied Contract.*—Where plaintiff contracted with defendant for certain work, and to enable defendant to give his entire time and energy to such work agreed to advance him not to exceed $15 per week, payable out of commissions to become due defendant, it being agreed that defendant should remain in plaintiff's employ at plaintiff's option, so long as defendant was "in debt" to him, such contract does not show any obligation upon defendant personally to repay such advancements, but the same must be collected from such commissions, nor does it show any implied promise arising from such terms.   p. 275.

6.   PRINCIPAL AND SURETY.—*Bond.*—*Construction.*—Sureties have the right to stand upon the strict terms of their contract, and their liability can not be extended by implication.   p. 279.

From Superior Court of Marion County (59,414); *John L. McMaster,* Judge.

Action by James N. Shockney against Archibald M. Arbaugh and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

*Harvey, Pickens, Cox & Kahn,* for appellants.
*Oliver H. Carson,* for appellee.

WILEY, J.—Action by appellee upon two contracts entered into by him and appellant Arbaugh, by the terms of which the latter agreed to act as insurance solicitor for the former, and upon a bond signed by Arbaugh as principal and appellants Lesley and Gist as sureties, guaranteeing performance on the part of Arbaugh. The amended complaint is in two paragraphs, to which an answer in denial was filed. Trial by the court, resulting in a finding and judgment for appellee. Appellants' joint and several mo-

tion for a new trial was overruled, and such ruling is the only error assigned.

The two contracts and bond sued on were executed the same day. The contracts may properly be designated as primary and supplemental, and will be so referred to in this opinion. By the terms of the primary contract, appellant Arbaugh engaged to act as soliciting agent for appellee for life insurance companies designated by the appellee. The appellee was to pay Arbaugh for his services a specified commission on all premiums collected and paid over upon the insurance secured by him. Arbaugh bound himself not to solicit applications for life insurance, or do any business connected therewith, for any other company than that designated by appellee. He also agreed to execute a bond with approved sureties, conditioned for the faithful performance of his duties and obligations as such agent. He also agreed to be governed by and submit to all rules and regulations then existing or that might thereafter be adopted by the company or companies for which he was to solicit business. The contract also provided that the appellee might offset against any claims under the contract any and all debts or liabilities of Arbaugh to appellee. The contract further provided that all moneys or other evidences of value or of indebtedness that might be received by Arbaugh "should be a fiduciary trust in the hands of said Archibald N. Arbaugh," and that all such funds, etc., should be paid over to the appellee at his option. It was further provided that either party might cancel the contract by giving to the other thirty days' notice in writing.

The supplemental contract provided for advancements to be made by the appellee to Arbaugh, not to exceed $15 per week, conditioned that Arbaugh should remit to appellee, on receipt of same, all moneys or notes secured by him for premium or premiums on applications for insurance. By the terms of this supplemental contract, these advances were to be a first lien on all commissions or renewals then due,

or that might thereafter become due to Arbaugh, and appellee was authorized to deduct any advances made from any money in his hands received on premiums, and which, under the primary contract, would be due to Arbaugh.   By the supplemental contract it was also provided that appellee was not bound to pay any commission on any note taken by Arbaugh for premiums until the same should become due and paid.   It was agreed between them that whenever any commission was due Arbaugh, the same should constitute and form a part of the amount which appellee agreed to advance from time to time.   Another provision of the supplemental contract was that it was the intent of the parties that appellee, by making advances, was to furnish Arbaugh with ready money for current expenses; and it was further stipulated that Arbaugh should remain in the employ of the appellee, at the latter's option, so long as Arbaugh should be indebted to him, and that appellee might terminate the supplemental agreement at any time, by giving written notice, without invalidating or interfering with the primary contract.

. By the terms of the bond, the obligors bound themselves that Arbaugh "shall pay or hand over all moneys payable in any event to James N. Shockney, aforesaid, which shall at any time be received by him or for which he shall be accountable or liable,   *   *   *   including all moneys received prior to the date of this instrument (if any there be), as well as that received thereafter; as also all moneys which he now owes, or hereafter may owe, to said James N. Shockney, aforesaid, on account of the advances made to him or otherwise, and shall now, and at all times hereafter, well, truly, and faithfully do and perform all the duties appertaining to his said agency, which are now, or which may hereafter be prescribed at any time for the government of the business of said agency by said James N. Shockney, aforesaid, and shall well and faithfully conform to and fulfil all instructions and directions which he, as said agent,

may at any time and from time to time receive from said James N. Shockney." The bond further required that Arbaugh should, on the 12th and 27th days of each month, account for, remit and pay over to appellee all moneys due by him, not previously remitted and duly accounted for, less his commission and allowance, expressly authorized by his written appointment. These several instruments should be construed together to ascertain the intention of the parties.

1. It is clear that under the primary contract the only compensation Arbaugh was to receive for his services as soliciting agent for appellee was the commission agreed upon, and this was to be repaid solely out of the premiums collected. He did not collect any premiums for which he failed to account. From the date of the contract to the time Arbaugh quit the service of appellee, the latter made weekly advances to him, aggregating $323.50. All notes taken by Arbaugh in payment of premiums were turned over to appellee, and he retained them and all proceeds therefrom.

2. The contracts speak for themselves. The language used is not ambiguous, and, as above suggested, the only compensation Arbaugh was to receive was a fixed commission upon the business he secured. To hold that the supplemental contract provides for additional compensation by an advancement of $15 per week, would be against the clear intention of the parties as expressed by their contract.

It appears from the evidence that Arbaugh was an inexperienced insurance solicitor, and it is evident that the advancements provided for in the supplemental contract were to aid him in his business. The intention of the parties is made clear by a provision in that contract that Arbaugh was to repay appellee all such advances out of the commissions earned, and, to secure such repayment, the terms of the primary contract were modified, in that he was to turn over to appellee all of his commissions to reimburse him for such advancements, and was to remain in his employ until the commissions earned would equal the advancements

made. Under the primary contract, Arbaugh was permitted to retain out of all remittances his commissions earned. As another evidence of the intention of the parties, the bond bound him to "pay over" to appellee "all moneys payable in any event  *   *   *   on account of the advances made to him or otherwise."

There is a sharp contention between the parties as to whether or not the advances made by appellee to Arbaugh constituted a personal indebtedness which was covered by the bond, but, from the view we have taken of the law as applicable to the facts proved, it is unnecessary for us to decide that question.

The supplemental contract provides that the appellee could terminate it at any time by giving to Arbaugh written notice. No written notice of his intention to terminate it was given, but the uncontradicted evidence shows that he refused to carry out its conditions on his part.

3. The two contracts were executed February 1, 1899, and the parties to them operated under them until on or about June 21, 1899. Prior to the last-named date, appellee had said to Arbaugh that he would not make any more advances, as provided by the supplemental contract, and in fact did not make any more. He told Arbaugh that he would make a new contract with him on an entirely different basis, prepared such contract, signed it, and tendered it to Arbaugh for his signature. The latter refused to sign it, and left the employ of appellee. Appellee's repudiation of the supplemental contract was such a breach of its terms as to relieve Arbaugh from further liability thereunder. He was, therefore, justified in quitting appellee's service. It is true the supplemental contract bound Arbaugh to remain in appellee's service until his earned commissions should be sufficient to repay the advances made; but, as he was operating under his primary and supplemental contracts, and could only earn commissions while

serving his principal thereunder, appellee's refusal to continue him in his service under the terms of the contracts, and his declaration that he would not so continue him, except upon the terms of a new contract, which he proposed and presented to him for acceptance and signature, were sufficient to release him from his obligations.

Performance on the part of Arbaugh was rendered impossible by the act of appellee, for the rule is that one who has violated his obligations under a contract is in no position either to compel the other party to fulfil his duties, or complain because the latter is unwilling to do so. 7 Am. and Eng. Ency. Law (2d ed.), pp. 151, 152, and authorities there cited. It is a recognized rule of law that a failure to perform the engagements of a contract constitutes a breach. 7 Am. and Eng. Ency. Law (2d ed.), pp. 149, 150. A vital condition in the contract before us was the advancement to Arbaugh of $15 per week. This advancement appellee refused to continue, and refused, also, to carry out the contract in any of its parts. Under the original contract, the evidence fails to disclose any liability on the part of Arbaugh, and, as appellee is at fault for refusing to carry out the supplemental contract, no liability upon the bond is shown.

The evidence is not sufficient to sustain the decision and judgment. Judgment reversed, and the court below is directed to sustain appellant's motion for a new trial.

## ON PETITION FOR REHEARING.

ROBY, J.—Appellant Arbaugh's testimony was in part as follows: "Well, he said, 'Mr. Arbaugh, I am at the point where I am going to have to cut off this $15 a week expense. The business does not justify it, and I have got a big payment to make right here the middle of the month to the home office, and I can not afford to pay this money any longer.' Well, I said, 'Is it your idea that we cancel the contract?'

He said, 'That is exactly the point.' And he says 'I will
make a contract on a strict commission basis. I will give
you as good a contract as I have got.' I says, 'I don't want
to stand in your way; if you are in that position I will not
hold you to the contract. You write up a new contract and
I will examine it.'" There is no doubt but the court was
authorized to find that the provision for written notice to
terminate the contract was waived. *Huber Mfg. Co.* v.
*Busey* (1896), 16 Ind. App. 410.

4. To "advance" is "to supply beforehand," "to pay be-
fore the equivalent is received," "to pay before the proper
time." *Powder Co.* v. *Burkhardt* (1877), 97 U. S. 111, 24
L. Ed. 973; *Vail* v. *Vail* (1850), 10 Barb. 69; *Gihon* v.
*Stanton* (1854), 9 N. Y. 476; *Balderston* v. *National Rub-
ber Co.* (1893), 18 R. I. 338, 27 Atl. 507, 49 Am. St. 772.
The term may be used to characterize a loan, or a gift, or
money to be repaid conditionally. *Chase* v. *Ewing* (1868),
51 Barb. 597-613; *Northwestern, etc., Ins. Co.* v. *Mooney*
(1888), 108 N. Y. 118-124. An advance is something
which precedes. It might be, as between these parties, made
in anticipation of expected commissions, and, in such event,
would no more create a debt than would an advancement
made by a father to a son in anticipation of the expected
inheritance by the latter. *In re Atwood* (1896), 38 N. Y.
Supp. 338; *Gihon* v. *Stanton, supra; Balderston* v. *Na-
tional Rubber Co., supra.*

5. If the contract in terms contains a promise by the
agent to repay the sums advanced, the transaction would
amount to no more than a loan, and the right to judgment
be undoubted. The primary contract contains no reference
to any advances made or to be made. In the supplemental
contract it is stipulated that "said advances shall be a first
lien on all commissions or renewals then due you, or that
hereafter may become due you, and that I am authorized to
deduct any advances made by me from any money in my
hands due or to become due you, and that after deducting.

Arbaugh v. Shockney.

all money due to me for money advanced, together with the net premium or premiums and internal revenue on any and all business reported by you, I will remit to you any balance on demand, except that I shall not be bound to pay any commission on any note taken by you for premiums until said note or notes become due and are paid by the makers thereof. It being understood and agreed that whenever there is any commission due, the same shall constitute and form a part of the amount hereby agreed to be advanced. It is also agreed that if in any week the commissions earned and paid to you exceed $15, then only such sum shall be advanced in the following week or weeks as may be necessary to bring your total income up to the said sum of $15 per week from the date of this letter to that time. It being the intent of this proposition simply to provide you with ready money for current expenses, and it being specifically agreed that you shall remain in my employ, at my option, so long as you are in debt to me." The purpose of the proposition is also otherwise stated as: "In order to enable you to devote your entire time and energy to securing business as set forth in your contract."

With deliberate care, appellee, in this letter written by himself, provides for every contingency which might prevent the application of earned commissions to the payment of advances, and stipulates that they shall be so paid with certainty and exactness, but wholly omits to mention any personal obligation on the part of the agent to repay such advances. If the intention was that the advances should constitute a loan, it is difficult to understand such omission. It is not only stipulated that the commissions earned shall be used to pay advances, but it is "specifically agreed that you shall remain in my employ, at my option, so long as you are in debt to me," a stipulation strongly tending to show an intention to rely upon the commissions to be earned to meet the advances, and inconsistent with the idea of personal liability. The use of the word "debt" is not contra-

dictory of the preceding stipulations. "The word 'debt' is of large import, including not only debts of record, or judgments, and debts by specialty, but also obligations arising under simple contract, to a very wide extent; and in its popular sense includes all that is due to a man under any form of obligation or promise." Burrill's Law Dict. Its use with reference to advances does not imply any different method of repayment than is in terms provided for.

As suggested by counsel for appellee, the agent evidently had no funds, and no experience as a life insurance agent. He was to be paid by commissions, not likely to come at once. The business of both would suffer from the agent's lack of funds. The proposition to advance $15 per week was made by appellee for his own advantage. He was not bound to continue such advances longer than his own interest dictated. The fund to be created by the agent's labor was the primary source from which both parties understood that the principal should be reimbursed. The agent risked the loss of all his time, the principal of $15 a week. Had the venture succeeded, both would have gained; when it failed, they both lost. That the appellee cared anything about the personal promise of the agent is unlikely, and that the agent agreed to assume the entire risk of the enterprise is not shown.

Neither does an implied promise to pay arise upon the making of advances as shown by the contract between these parties. *Lang* v. *Kaiser* (1876), 34 Mich. 317-319; *Northwestern, etc., Ins. Co.* v. *Mooney*, 108 N. Y. 118.

In the Michigan case just cited the defendant let a contract to the plaintiff for the making of tubs out of materials furnished by defendant. He gave evidence tending to show that he assisted in making the tubs, and sought to have credit upon the contract for the reasonable value of the services so rendered. The court said: "There was no evidence given by defendant tending to show that plaintiff had ever requested such assistance to be given, or that he had

agreed to pay for the same. Now whatever the rule may be as between strangers, where one performs valuable service for another, with his knowledge and assent, we think in cases like the present the relation existing between the parties precludes any implied promise to pay for such services, and that the charge of the court in this respect was correct."

In *Northwestern, etc., Ins. Co.* v. *Mooney, supra,* suit was brought upon a bond given by an insurance agent, as in the case at bar, it being alleged that it had been agreed that the company should advance "to the said Mooney the sum of $1,200, which was to remain a first lien upon all the business and renewal interest secured to said Mooney under the contract, until repaid by said Mooney, with interest at seven per cent. ;" and that the plaintiff did accordingly advance to him said sum, which he has not paid. It was said, "the plaintiff's contention in this action is, that the clause relating to advances of money in the contract named provides for a loan to Mooney to be repaid by him absolutely and unconditionally." In reversing a judgment for the plaintiff the court said: "In the first place there is no express agreement on the part of Mooney to pay back the money; there is no agreement that its advance shall create an indebtedness on his part; no words signifying that he is to be a borrower, nor that the plaintiff will lend to him any money. These omissions in an agreement so fully and minutely defining the duties and contract obligations of the agent, and the contract rights of the company, are of great significance. It would have been much more natural to insert words signifying that to be the true character of the transaction, if it was so intended, than to omit them, and much easier to say directly that Mooney assumed a personal liability, if that were the fact, than to use words which require an extended argument on the part of counsel to satisfy a referree or court that such liability, although not expressed, may be inferred."

Again: "But the contract goes further. It is added that. the amount advanced 'is to remain a first lien upon all the business and renewal interest secured to the said Mooney under the contract, until repaid with interest at seven per cent. These circumstances are not inconsistent with the view already expressed, nor are they inconsistent or in contradiction of the meaning attributed to the promise of the company to make the 'advance.' They constitute an agreement that the advance made shall be a lien on the interest of the agent under the contract, but that involves no personal liability. It is an advance of money upon personal security, but not upon personal credit. * * * Nor in this case can the fact that the duration of the lien is provided for until the amount 'is repaid,' allow a different conclusion. It is clear that it does not imply an agreement on Mooney's part to be personally bound for its payment. *Salisbury* v. *Philips* [1813], 10 Johns. 57."

6. This is an action founded upon a bond executed by Arbaugh as principal and by appellants Daniel Lesley and Joseph T. Gist as his sureties, in accordance with the provision of the primary contract that he should execute a satisfactory bond for the faithful performance of his duties and obligations as such agent. One of the conditions of the obligation is that the principal shall pay over all moneys which he owes, or may hereafter owe, on account of advances made to him or otherwise. In determining whether such a default is shown upon the part of the principal as renders the sureties liable under the terms of the bond, they have the right to stand upon the strict terms of the contract, and their liability can not be extended by implication. *Town of Salem* v. *McClintock* (1896), 16 Ind. App. 656, 59 Am. St. 330. Proof of such default must be made. It does not follow that because the terms of the bond are broad enough to include liability for a certain default, therefore such default is shown.

The petition for a rehearing is overruled.