[Civ. No. 12853. Second Dist., Div. Three. Mar. 26, 1942.]

EGERTON SHORE, Respondent, v. JOE CRAIL, JR., Appellant.

Crail, Shearer & Waters for Appellant.

Warren E. Libby and Paul C. Hill for Respondent.

SCHAUER, P. J.—This is an appeal, on the judgment roll alone, by defendant from a judgment in favor of plaintiff in an action to recover money allegedly due under an option to

purchase contract after exercise of the option by defendant. The following material facts are disclosed by the findings: On or about December 1, 1936, defendant, who was then the owner of all the outstanding capital stock of the Hollywood Building & Loan Association sold and delivered the same to the plaintiff in consideration of the execution by plaintiff of an agreement with defendant whereby plaintiff granted defendant an option, for the period of twenty-five years, to repurchase all of such stock for the sum of One Dollar plus a consideration to be computed as therein provided and

### [PROVISIONS APPLICABLE DURING TERM OF OPTION]

whereby plaintiff also covenanted that during the existence of the option he would render personal services to the association, including its active management "under the advice, counsel and supervision" of defendant; that he would "endeavor to obtain additional private investment in the certificates of said association;" that all profits should inure to the benefit of the association; that he would on or before the tenth of each month deliver to defendant "a full and complete statement of the assets and liabilities of the association as of the last day of the preceding month and of its income and expenses during the preceding month;" that he would "take as salary or other compensation for my services not to exceed the following sums, which are to come only out of earnings, except that the first One Hundred Fifty Dollars ($150.00) of my salary shall be payable regularly out of future anticipated earnings whether the earnings are yet sufficient to pay the same or not, but my salary if so advanced is to be finally paid out of earnings, if and when collected.

"One Hundred Fifty Dollars ($150.00) per month until the monthly net earnings exceed Three Hundred Dollars ($300.00) per month. . . .

"I will submit a budget to Joe Crail, Jr. [defendant], and no expense shall exceed a budget approved by him until he has approved a revised budget including such items. . .

### [PROVISIONS APPLICABLE ON EXERCISE OF OPTION]

"In addition to the dollar above provided for, provided the above provisions and obligations on my part have been fully complied with, I shall also receive upon the exercise of this option an adjustment if necessary which, combined with my salary, will make my total earnings from the association and

its business one-quarter of net earnings plus my salary. . . .

"I shall also receive one per cent (1%) on all investments in certificates or shares of the association in excess of present certificates."

It will be noted at this point that of the provisions applicable on exercise of the option as above set forth those in the first paragraph call for an adjustment of plaintiff's *salary or earnings from the association* while that stated in the second paragraph is *no part* of his "total earnings from the association and its business" but is exclusively *a part of the consideration to be paid plaintiff by defendant* upon the latter's purchase of the stock in exercise of his option.

On January 21, 1939, defendant exercised the option and paid plaintiff the sum of one dollar but no more, asserting that under the factual conditions and a proper construction of the contract no further payment was due. Plaintiff thereupon brought this action, alleging among other things that under his management substantial profits had been earned by the association entitling him to certain salary adjustments provided for pursuant to a sliding scale specified in the contract and that additional investments in association certificates had been made, on the excess of which over the certificates outstanding at the date of the contract there was due him from defendant an allowance or commission of one per cent. Defendant filed an answer and a cross-complaint denying that the association had earned any profits during the term of the option and charging that plaintiff had withdrawn more than the $150 per month minimum "advance" or salary to which he was entitled pursuant to the contract in the absence of earned and collected profits and that defendant's stock in the association had thereby been depreciated in value to defendant's damage.

The trial court found that the association achieved no net earnings during the option term but that the public investment in certificates had increased some $264,192. On the basis of that finding it concluded that plaintiff was entitled to no salary adjustment but that he was entitled to receive $2,641.92 (being one per cent of the certificate investment excess) from defendant. It further found that plaintiff had withdrawn *from the association* $800 more than the minimum salary to which he had been entitled and allowed this sum *in favor of defendant* as an offset against the $2,641.92 found due from him to plaintiff. It also specifically found that "it

is not true that by reason of withdrawal of funds by plaintiff or any act of plaintiff that the value of stock was decreased and/or that defendant was damaged thereby.'' In view of the last mentioned finding it is difficult to see on what theory defendant was allowed the benefit of the $800 overpaid by the association to plaintiff. The record shows no assignment of the claim for that amount from the association to defendant. However, we are not here concerned with possible error *in favor of defendant,* there being no appeal by plaintiff.

Defendant contends (1) that under the correct construction of the contract the minimum salary paid to plaintiff was a mere advance against earnings, that plaintiff should be required to reimburse the association for all money so advanced and that the amount *due the association* as reimbursement should be offset against any *money accruing to plaintiff from defendant* on exercise of the option; (2) that plaintiff breached the option agreement by drawing more than one hundred fifty dollars per month salary while no profits were being earned and hence that under the provisions applicable on exercise of the option he either forfeited or there did not accrue to him the right to any compensation other than the one dollar which was paid; (3) that the amount awarded plaintiff was not previously liquidated and hence that the court erred in awarding interest thereon to plaintiff. We conclude that none of such contentions is tenable.

## SALARY PAID AS ADVANCE AGAINST EARNINGS NOT RECOVERABLE

 (1) By the language of the contract hereinabove quoted the *payment* of the $150 per month *to plaintiff* was *unconditional;* there was a *conditional provision* by which under certain circumstances the salary so paid would be charged against the *association's earnings.* That condition would arise only upon earnings by the association ''if and when collected.'' The court found that during the pertinent period there were no net earnings; hence, obviously, the condition never arose.

It may be remarked in passing that while no California case on this subject has been called to our attention it appears to have been held in several other jurisdictions, in cases on contracts providing in various forms for advances by an employer to an employee on account of commissions to be earned subsequently, that the use of the word ''advance'' does not

imply the creation of a debt in the first instance and generates no obligation of repayment except out of commissions earned, where none is expressly stated or fairly to be implied from provisions which are so stated (see *Kane* v. *Auto Laks Mfg. Co.* (1918), 172 N. Y. Supp. 275; *Schlesinger* v. *Burland* (1903), 42 Misc. 206 [85 N. Y. Supp. 350]; *Arbaugh* v. *Shockney* (1904), 34 Ind. App. 268, 276-277 [71 N. E. 232] (opinion on rehearing), 72 N. E. 668; *Northwestern Mut. Life Ins. Co.* v. *Mooney* (1888), 108 N. Y. 118 [15 N. E. 303]; *Minnesota Mut. Life Ins. Co.* v. *Fraser* (1924), 128 Wash. 171 [222 Pac. 228]; 2 C. J. S. 496). As already suggested, there is nothing in the contract here which on any contingency whatsoever imports an obligation on plaintiff to repay to the association (or to defendant) the minimum salary paid him.

## DEFENDANT ESTOPPED TO CLAIM AS BREACH ACT PREVIOUSLY APPROVED BY HIM

(2) As to the second proposition, it is true that the court found, as hereinabove related, that plaintiff caused the association to make him overpayments of salary aggregating $800. But it is also true that the contract in question was a bilateral agreement, executed by both plaintiff and defendant, which gave rights to, and imposed reciprocal obligations upon, both parties. Among other things it provided that plaintiff would undertake "the active management of the association under the advice, counsel and supervision" of defendant; that each month plaintiff would deliver to defendant a statement of assets and liabilities and of income and expenses; that he would submit a budget and that no expense should exceed a budget approved by defendant.

In addition to alleging overpayment of salary, defendant pleaded breach of the contract by plaintiff in several particulars, none of which is upheld in the findings. He did not plead any failure of plaintiff to deliver monthly the statement of assets and liabilities and of income and expenses; it is to be presumed that defendant pleaded his case as favorably as the facts permitted (*Gruwell* v. *Seybolt* (1889), 82 Cal. 7, 9 [22 Pac. 938]; *Whittemore* v. *Davis* (1931), 112 Cal. App. 702, 708 [297 Pac. 640]; see also *Page* v. *City of Santa Rosa* (1937), 8 Cal. (2d) 311, 314 [65 Pac. (2d) 775]), and since the execution of the contract and its performance generally, except as assertedly breached, are averred and re-

lied upon by both plaintiff and defendant, and since each is, in effect, permitted to recover, it will be presumed on this appeal that there was no breach by plaintiff by way of failure to deliver such monthly statements of income and expenses. ▪ Furthermore, on the issue of expenses, the court, in negating defendant's claim in that regard, specifically found. that it was "not true that plaintiff caused the expenses of the operation of the . . . Association . . . to be in excess of amounts approved by the defendant." As this appeal is on the judgment roll, it must be presumed that the evidence fully supports such finding (*Coyne* v. *Spellacy* (1938), 12 Cal. (2d) 284, 286 [83 Pac. (2d) 715]); a proper inference from that finding, construed with. the others to support the judgment (*Anglo-California T. Co.* v. *Oakland Rys.* (1924), 193 Cal. 451, 460-461 [225 Pac. 452]), is that defendant, in performing his duty under the contract to give "advice, counsel and supervision" to plaintiff, and in passing on the budget, expressly authorized and approved the withdrawal of the extra $800. ▪ The fact that plaintiff was building up the public investment in certificates of the association in a substantial amount (an increase of more than $264,000 as of the date the option was exercised) and that he was entitled, on exercise of the option, to receive one per cent upon such amount, may well have been considered by defendant as a proper basis for permitting the withdrawal of the excess salary. Under such circumstances the defendant is estopped in an action between himself and plaintiff, from setting up the withdrawal as a breach of the contract. In any event, since the trial court impliedly found the withdrawal not to be a breach of the contract we are, on this record, bound by such finding. ▪ As noted above, if there was error *in favor* of defendant in allowing the $800 as an offset against the amount due *from him* it cannot be considered on this appeal; only plaintiff could be aggrieved thereby and he has not appealed.

## INTEREST ALLOWANCE PROPER ON AMOUNT MATHEMATICALLY CALCULABLE

▪ (3) Lastly, there was no error in awarding interest on the amount found due to plaintiff. By the terms of section 3287 of the Civil Code "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest

thereon from that day . . ." A mere mathematical calculation was all that was required to determine the amount due plaintiff on the claim which was allowed. The amount of certificates outstanding on the day he took over control was reflected in the books of the association; likewise, the amount of such certificates on the day the option was exercised was a fixed quantity. One per cent of the excess of the latter over the former thereupon became due plaintiff from defendant. The suggestion that such amount was nevertheless rendered unliquidated because an offset was allowed is not tenable. If we assume that the offset was properly allowed to defendant (which we do not decide) we are still confronted with the possibility that the ownership of such offset (including the right to interest on it, if any) may have been acquired by defendant from the association subsequent to his exercise of the option and the creation of his ensuing debt to plaintiff. The record is entirely silent as to how or when defendant acquired title to such claim from the association; the finding previously quoted does determine that the value of defendant's stock was not impaired and that defendant was not himself damaged by any act of plaintiff. Furthermore, the offset appears itself to have been liquidated in amount and hence would not operate to make plaintiff's claim unliquidated (see *Hansen* v. *Covell* (1933), 218 Cal. 622, 629-632 [24 Pac. (2d) 772]). In any event, in the absence of the evidence, we are unable to ascertain error in the judgment as rendered.

The judgment is affirmed.

Shinn, J., and Shaw, J. pro tem., concurred.