NATIONAL MEMORIAL PARK, INC.,
National Mausoleum Corporation, and
National Memorial Park Cemetery, Inc.

v.

Harvey GELLER.

Civ. No. 19885.

United States District Court,
D. Maryland.

May 15, 1970.

**708**

Harrison M. Robertson, Jr., and Brune, Robertson & Iglehart, Baltimore, Md., for plaintiffs.

Stanley Klavan, and Klavan & Mannes, Rockville Md., for defendant.

HARVEY, District Judge:

In this contract action, certain employers are seeking to recover sums allegedly due from an employee under a written agreement between the parties. Harvey Geller, the defendant, was employed by the three corporate plaintiffs as their Sales Director pursuant to a written contract dated January 1, 1964. As compensation, Geller was to receive commissions on sales made under his supervision of ground burial spaces, bronze memorials, cremation niches, underground crypts and the like. It was further provided in the agreement that the plaintiffs would advance Geller $650 per week against his commission account.

On November 6, 1966, Geller resigned his employment, and his resignation was accepted by Robert F. Marlowe, President of the plaintiff corporations.[1] At the time of such resignation, advances to Geller exceeded his earned commissions by $12,780.07, and in this action the plaintiffs seek to recover this amount from their former employee. The plaintiffs have filed a motion for summary judgment together with an affidavit and the deposition of Geller. The defendant has opposed plaintiffs' motion, has filed affidavits in support of such opposition and has itself filed a cross-motion for summary judgment relying on all the pleadings and affidavits which have heretofore been made a part of the record.

It is not disputed that plaintiffs' advances to Geller exceeded the amount due him as commissions by $12,780.07. The issue here is whether under the contract between the parties the employee was obligated to repay to his employers any such excess on termination of his employment. Plaintiffs claim that a proper construction of the agreement in question under Virginia law indicates that Geller was obligated to repay such excess when his employment was terminated. Geller contends first that the contract on its face includes no such obligation to repay these excess amounts and that the contract should be construed to permit Geller to retain such excess sums. Secondly, Geller contends that certain oral representations made to him at the time the agreement was executed clearly show an intention on the part of the parties that he would be permitted to retain any excess of advances over his earned commissions. In reply to this second point, plaintiffs argue that under Virginia law the parol evidence rule excludes all evidence of prior or contemporaneous conversations between the parties at variance with a written contract of this sort.

**I**

This Court will first undertake to construe this written contract on its

---

1. The contract was to remain in force for five years, subject to prior termination by the employers under certain conditions. No question has been raised as to the employee's right to resign, as apparently the contract was terminated by mutual agreement.

face and without reference to any alleged contemporaneous statements which it is claimed should be considered in ascertaining the parties' true intention. As this contract was made and to be performed in the State of Virginia, Virginia law will be applied. Mackubin v. Curtiss Wright Corp., 190 Md. 52, 57 A. 2d 318 (1948); Becker Pretzel Bakeries, Inc. v. Universal Oven Co., 279 F.Supp. 893 (D.Md. 1968).

The contract in question entitled "Employment Agreement", is six typewritten pages in length and was prepared by the employers. Paragraph 2 provides that the employee as Sales Director shall devote his efforts and energies exclusively to the affairs of the companies at Falls Church, Virginia, on a full-time basis and shall be compensated by a commission on sales. In Paragraph 3, it is provided that the companies shall render a quarterly accounting to the employee and that the companies' books and records would determine his standing. On page 4, there is a paragraph dealing with the question of advances which provides as follows:

### "ADVANCES

"The companies agree to advance the Sales Director $650 per week against his commission account. No decrease will be considered until June 1, 1964, if this sum is not earned by volume. These advances shall be offset against his earnings. The Sales Director may draw in excess of that figure if due him, in light of commission on net sales, as outlined herein in 'Compensation and Reserve Formula' ". (underlining in original)

At the top of page 5 there is the following provision:

### "COMPENSATION RESERVE AND PAYMENTS FORMULA

"1. Start with Item #6 (net sales)
2. Multiply by 5%
3. Deduct from the resulting dollar figure 20% for $10,000. commission reserve. (see explanation)

4. Result is earned commission
5. Deduct advances made in same period.
6. The result of deduction is payable to manager, or due from him." (Underlining in original)

It is the majority rule that where a contract of employment provides for advances to an employee to be charged to and deducted from commissions, the employer cannot recover from the employee the excess of advances over the commissions earned in the absence of an express or implied agreement to repay any such excess. Annotations, Personal Liability of Servant or Agent for Advances in Excess of Commissions Earned, 57 A.L.R. 33-38 (1928), 165 A.L.R. 1367-1373 (1946). Among the states that have adopted this rule are Connecticut, New York, New Jersey, West Virginia and South Carolina. Valoco Building Products, Inc. v. Chafee, 4 Conn.Cir. 322, 231 A.2d 101 (1966); Johnson v. Quayle & Son Corp., 236 App.Div. 351, 257 N.Y.S. 874 (1932); Joseph Toker, Inc. v. Cohen, 67 N.J. Super. 68, 169 A. 2d 838 (1961); Richmond Dry Goods Co. v. Wilson, 105 W.Va. 221, 141 S.E. 876 (1928); McConnell v. Baker, 170 S. C. 111, 169 S.E. 842 (1933).

Among the minority jurisdictions is Pennsylvania which takes the view that an employee is obligated to repay any amount advanced in excess of his total earnings where it has been agreed that advances would be applied against and deducted from the total earnings of such employee. Snellenburg Clothing Co. v. Levitt, 282 Pa. 65, 127 A. 309 (1925). No Virginia case has been cited to the Court dealing with the precise issue here.

■■ A reading of the contract involved in this case in the light of the cases cited hereinabove leads to the firm conclusion that Geller did not either expressly or impliedly agree to repay to the plaintiffs any excess of advances over commissions earned. The contract was prepared by the employers and must accordingly be construed against them.

Southern Ry. Co. v. Coca Cola Bottling Co., 145 F.2d 304, 307 (4th Cir. 1944); Algodon Manufacturing Co. v. Gill, 243 F.2d 160, 162 (4th Cir: 1957). Advances here were to be "offset against" Geller's commissions and not charged to him personally as a loan or other indebtedness. Had there been an intention to require the employee to repay the excess of advances over commissions, certainly a short statement would have been included in the 6–page document dealing not only with the obligation of repayment but also with the date for such repayment. There is nothing in the agreement to indicate whether such alleged repayment should be made when the quarterly accounting was rendered to Geller, or on termination of the agreement, or within a specified period after termination. The agreement's silence as to these particulars indicates to the Court no intention on the part of the parties that the employee would be obligated to make repayment.

Under Paragraph 5 of the agreement, the employers had the right to terminate on thirty days written notice if cancellation rates or direct sales costs averaged over a period of three months exceeded certain limits set forth or if volume of sales dropped below specified quotas as set forth in the agreement. Under Paragraph 5(d), the Board of Directors was further empowered to terminate the agreement on five days notice for any cause deemed in the Board's sole discretion "inimical to or not in the best interests of the companies, or any of them." Furthermore, the employers had the right under the "ADVANCES" clause to decrease the amount of the advances after June 1, 1964 if the sum was not earned by volume.

■ These provisions not only indicate the absence of any implied agreement on the part of the employee to repay any excess of advances over commissions but further show an intention on the part of the parties that the employee could retain advances even if they were more than his commissions. The companies were protected by the termination clauses and also by their right to decrease the amount of the advance if the accounting (maintained by them on their books) showed that enough commissions were not being earned. In fact, there was no decrease in the amount of the advances after June 1, 1964, nor at any time before November 7, 1966 when the defendant resigned his employment.[2] At all times during the employment, the plaintiffs reported the advances to Geller as salary paid to him on Internal Revenue Service W–2 forms.

■■ The plaintiffs place particular reliance on the provisions in the "COMPENSATION RESERVE AND PAYMENTS FORMULA" clause which states "The result of deduction is payable to manager, or due from him." But the phrase "due from him" would appear to mean merely that for accounting purposes any excess would be shown as being carried over to be applied against future commissions. There is no language here stating either expressly or impliedly an obligation on the part of the employee to repay the excess, nor a time for such repayment. Indeed, during the almost three years that the agreement was in force, Geller was never at any time called upon to repay the excess of advances over commissions even though at the end of various accounting periods large sums were shown to be due from him. The apparent purpose of the "ADVANCES" clause and the "COMPENSATION RESERVE AND PAYMENTS FORMULA" clause was to insure that the employers did not pay the employee twice, namely, both by way of advance and by way of commissions. The plaintiffs' claim that Geller had a specific obligation to repay excess advances appears to have been an afterthought.

In the West Virginia case of Richmond Dry Goods Co. v. Wilson, 141 S.E.

2. At times, Geller was even permitted to draw as advances more than the $650 per week specified in the contract.

at page 876, *supra,* the contract in question contained the following provision:

"It is understood and agreed that you are to pay all expenses. We agree to advance weekly expense account, which amounts are to be charged against earned commissions. We agree to pay a drawing account of $200.00 per month, payable semi-monthly, which is to be charged against your earned commissions."

In holding that the employee was not thereunder required to repay sums advanced in excess of commissions earned, the Court said the following, at page 877:

"The course pursued by the parties does not indicate that they considered the defendant to be personally obligated. He did pay the expenses in the first instance, thereby doing what the strict letter of the contract exacted. But, upon receipt of his expense accounts, the plaintiff reimbursed him. These repayments quite evidently constitute the advances referred to in the contract. Personal responsibility is not consistent with the explicit covenant in the contract that the advances were to be charged, not to defendant, but *against his earned commissions.*" (Emphasis in original)

The rationale for the Court's conclusion was stated as follows, at page 877:

"We cannot construe this engagement to imply that all the risk was taken by the employee. We regard it rather as signifying a joint enterprise in which the employee furnished his time and ability and the employer furnished the money necessary to enable the employee to devote himself thereto. Both expected the adventure to produce a fund (the earned commissions) from which each would be fully compensated—the one for his time and labor, and the other for his money. The advances are therefore not regarded as loans to the employee but as speculations in a common enterprise. 'In its strictly etymological significance, the "advance" of money would

not imply a loan. *Century Dictionary,* "Advance" 1 Am. & Eng.Ency. of Law (2d Ed.) 757. We speak of an advance of wages and an advance of salary, yet no one would regard this as a loan of so much money to the employee, which he has promised or is expected to repay. Again, for the purposes of a joint adventure, one agrees to give his services, and the other to advance the capital required. No one would consider the former bound to repay the capital advanced out of his own means. Hence, without a promise to repay, express or fairly to be implied from the agreement under which the advances were made, a promise to advance money for a particular purpose—as here, the furtherance of the defendant's business—does not import an expectation of its return personally by the person to whom the money was advance.' Schlesinger v. Burland, [85 N.Y.S. 350], *supra,* page 351 (42 Misc.Rep. [206], 208). *See also,* Arbaugh v. Shockney [34 Ind. App. 268, 71 N.E. 232, 72 N.E. 668], *supra,* page 275."

The plaintiffs rely on the Virginia case of Staples and Staples, Inc. v. Hervey, 133 Va. 305, 112 S.E. 607 (1922). However, in that case a salesman who sued his employer, claiming that under the contract of employment he was owed traveling expenses, was permitted to recover a part of the amounts claimed. That case therefore deals with the question of the liability of the *employer* for agreed advances which exceed commissions and is not pertinent to the converse situation existing here. See Annotation, Liability of Employer for Agreed Advances or Drawing Account Which Exceed Commissions or Share of Profits Earned, 95 A.L.R.2d 504–514 (1964).

II

There is an alternative ground for this Court's conclusion that defendant is entitled to summary judgment in this case. One of the affidavits filed by the defendant is that of Norman Marlowe,

who is the son of Robert Marlowe, the President of the plaintiffs, and who held the title of Assistant to the President on January 1, 1964. Norman Marlowe participated in the discussions between Geller and his father concerning the terms of the former's employment, and at his father's direction prepared the employment agreement in question.

In his affidavit, Norman Marlowe states that he had told his father that the advances proposed were so patently in excess of Geller's ability to earn commissions that from the beginning they would put Geller in a deficit position because there was insufficient business in Virginia to produce commissions to cover the advances; that Geller wanted the matter clarified since if he had to repay the advances, the agreement would result in a decrease rather than an increase in his present earnings; that on two different occasions before the agreement was signed Geller wanted assurance that he would not have to repay the excess; that on both occasions Robert Marlowe gave such assurances and told Geller that he had no intention whatever of charging him back for overdrafts; that Robert Marlowe stated in Geller's presence that the previous Sales Director had left with a $10,000 overdraft, with no attempt having been made to recover such sum and that when the employment agreement was presented to Geller for signing, the point was again raised and Robert Marlowe again stated that Geller would not be charged for any overdrafts. An affidavit of Geller himself corroborates these statements of Norman Marlowe.

Plaintiffs contend that the evidence contained in these affidavits is not admissible to vary the terms of this written contract. In Rock-Ola Manufacturing Corporation v. Wertz, 282 F.2d 208 (4th Cir. 1960), the Fourth Circuit Court of Appeals had occasion to discuss the Virginia parol evidence rule. At page 210, the Court said:

"Virginia has long recognized traditional exceptions to the parol evidence rule in cases such as fraud or mistake in the execution of a written agreement, Slaughter v. Smither, 1899, 97 Va. 202, 33 S.E. 544, ambiguity or doubt, Shockey v. Westcott, 1949, 189 Va. 381, 53 S.E.2d 17, 20, and to show that a written instrument was not to take effect until the performance of a condition precedent, Whitaker & Fowle v. Lane et al., 1920, 128 Va. 317, 104 S.E. 252, 11 A.L.R. 1157."

Even if the contract in this case were not subject to the construction that this Court has placed upon it, the very most that might be said in support of plaintiffs' position is that the terms of the contract are subject to ambiguity or doubt. As previously stated, there is no express language in this employment agreement providing that Geller had an obligation to repay excess advances, nor providing for a time for such repayment. This Court concludes that the uncontradicted evidence of the intent of the parties submitted by way of affidavits would be admissible under Virginia law to explain such ambiguity. Such evidence clearly shows that the parties intended that Geller would not be obligated to repay his employers the amount of any excess of his advances over his earned commissions. Indeed, such evidence is particularly strong in this case because it has been introduced by way of an affidavit of the representative of the plaintiffs who actually prepared the agreement.

Pulaski National Bank v. Harrell, 203 Va. 227, 123 S.E.2d 382, (1962), relied upon by the plaintiffs, is not to the contrary. In that case, it was held that the trial court should have excluded parol evidence offered to vary the terms of a written contract because the contract in question imposed a legal obligation "in clear and explicit terms."

For the reasons stated, plaintiffs' motion for summary judgment is denied, and defendant's motion for summary judgment is granted. An order to such effect will be entered.