George SKWERES,
Defendant-Appellant,

v.

DIAMOND CRAFT COMPANY,
Plaintiff-Appellee.

No. 07A01–8611–CV–307.

Court of Appeals of Indiana,
First District.

Aug. 27, 1987.

Rehearing Denied Oct. 19, 1987.

Richard A. Clem, Alden & Clem, India-
napolis, for defendant-appellant.

Karl T. Ryan, Walsh & Ryan, Indianapo-
lis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, George Skweres
(Skweres), appeals a judgment of the
Brown Circuit Court, sitting without a jury,
in favor of plaintiff-appellee, Diamond
Craft Company (Company), on Company's
suit to recover excess advances on commis-
sions.

We affirm.

## STATEMENT OF THE FACTS

Company, a sole proprietorship owned by
Donald Wegner, is engaged in the retail
selling of cookware, flatware, china, stem-
ware, and related items. All of Company's
sales result from door-to-door home solici-
tations, and its salespersons, who have the
status of independent contractors, are paid
on a commission basis. As Wegner suc-
cinctly testified: "[T]hey are paid on what
they sell." *Record* at 68. In April of 1973,
Company and Skweres entered into a writ-
ten agreement whereby Skweres began
selling Company's wares. The standard,
beginning commission rate for Company
salespersons was 15%, but Skweres
started at 40% because he was an experi-
enced salesman. In late 1977, Skweres
informed Company that he would be winter-
ing in Las Vegas every year. To avoid
having to open a checking account in
Nevada, Skweres requested that Company
deposit $500.00 weekly in his Indiana
checking account as advances against his
commissions. Although such an arrange-
ment was against Company's policy, as
stated in its sales manual, Wegner agreed
to the advances because Skweres was one
of Company's better salesmen and had be-
come a personal friend. The arrangement
was never reduced to a writing because
Wegner considered it a temporary measure
to maintain Skweres's cash flow for the
two to three months the salesman would be
in Nevada, and because Wegner believed
Skweres would generate enough commis-
sions to cover the advances. Wegner did
suggest to Skweres that he attempt to
reactivate several former Company sales-
persons who resided in Utah. Unfortu-
nately, the arrangement did not prove to be
a temporary situation and Skweres's com-
missions usually did not equal the ad-
vances. The advances were made steadily
from 1977 on into 1982. Company main-
tained records reflecting the status of
Skweres's commission account, and when-
ever Skweres's earned commissions exceed-
ed the advance paid for a particular week,
the excess was applied to reduce the debit
balance. On occasion, Company would also
transfer funds from Skweres's reserve ac-
count to reduce the debit balance. How-
ever, Skweres rarely had an excess and
soon the debit balance was quite large. On
several occasions when Skweres picked up
his advance and commission statement in
person, he referred to the amount as "the
national debt." *Record* at 265–66. At one
point Skweres asked Company's bookkeep-
er, Elaine Key, not to include his commis-
sion statement with the advance sent to his
bank, because he did not want his bank to
know how indebted he was to Company.
In January 1982, Don Wegner and Elaine
Key met with Skweres and two other Com-
pany salesmen, Ken Foster and Steve Bay-
man, who had also amassed sizable debit
balances from advances. Wegner ex-
plained to the three men that the outstand-
ing amounts had gotten out of hand and
had created a cash flow problem for Com-
pany. To alleviate the problem Wegner
informed them that, starting July 1, 1982,

Company would begin assessing 18% interest on the outstanding balances. As Wegner recalled later in his testimony, "[T]here was no objection whatsoever to the debt or to the obligation." *Record* at 95. Skweres terminated his employment with Company shortly thereafter, without repaying the advances.

Company eventually brought a suit against Skweres for the unpaid debt balance, $27,494.36, plus accrued interest from July 1, 1982. At a one-day bench trial, the testimony of Don Wegner and Elaine Key related the foregoing facts. Not surprisingly, Skweres's testimony presented a sharply different version of the events. According to Skweres, the $500.00 weekly advance was Wegner's idea. He maintained that he performed extra duties—conducted seminars, supervised sales meetings, and presided at banquets—and he "just assumed" the $500.00 per week was a salary for these additional tasks. *Record* at 217. Skweres did admit that Company did not withhold any taxes or social security contributions from the payments. He also admitted that he received, for tax purposes, Form 1099's, which are used to report, among other things, commissions, rather than Form W–2's, which are used to report salaries. Skweres denied receiving weekly commission statements and also denied that he ever acknowledged or agreed to repay the excess advances.

The trial court, in its Findings of Fact and Conclusions of Law, determined that Company had advanced commissions to Skweres at his request, and that the amount of commissions advanced exceeded the commissions earned. It also determined that, whenever possible, Company had applied excess commissions earned and funds from Skweres's reserve account to reduce the outstanding balance and that Skweres never objected to this practice, even though it was reflected in the weekly commission statements he received. Based on these findings, the trial court concluded that the parties had modified their original agreement and that Skweres was obligated to repay the excess advanced commissions. Having found that Company had failed to prove any agreement as to interest, and

that Skweres had not been properly credited on two occasions, the trial court entered judgment in favor of Company in the amount of $21,683.64. Skweres then instituted this appeal.

## ISSUE

Skweres presents two issues for our review, which we will discuss as one. It is:

Whether the trial court erred as a matter of law and against the weight of the evidence in finding that the parties had modified their contract so that Skweres was obligated to repay the excess advances on commissions.

## DISCUSSION AND DECISION

Skweres claims the trial court erred as a matter of law and against the weight of the evidence in finding that the parties had modified their contract so that he was obligated to repay the excess advances on commissions.

When presented with an appeal of a judgment in which the trial court entered findings of fact and conclusions of law, we will not disturb the judgment unless it is clearly erroneous. *Jochem v. Kerstiens* (1986), Ind.App., 498 N.E.2d 1241. The findings and conclusions must be liberally construed in support of the judgment, and they will be considered clearly erroneous only if a review of the entire record leaves us with a definite and firm conviction that a mistake has been made. *Id.* In performing our function of review we will neither weigh the evidence nor judge the credibility of the witnesses. *Gorbett v. Estelle* (1982), Ind.App., 438 N.E.2d 766, *trans. denied.*

First, Skweres contends the trial court erred as a matter of law in finding that he was personally liable to repay Company the advances to the extent they exceeded earned commissions. Skweres cites three cases in support of this contention: *National Memorial Park, Inc. v. Geller* (D.Md.1970), 312 F.Supp. 707; *Arbaugh v. Shockney* (1904), 34 Ind.App. 268, 71 N.E. 232, *reh. denied,* 72 N.E. 668; *Richmond Dry Goods Co. v. Wilson* (1928), 105 W.Va. 221, 141 S.E. 876.

In *Arbaugh, supra,* two written contracts were executed by the principal and the agent. The primary contract provided that the agent would sell life insurance policies for the principal in return for a specified commission on all premiums collected. By the terms of the supplemental contract, the principal agreed to advance the agent $15.00 per week, the advances becoming a first lien on all commissions earned thereafter. That is, whenever a commission was earned it was to be applied to reduce the amounts advanced. Business went slack and the principal ceased paying advances, prompting the agent to terminate his employment without having earned sufficient commissions to offset the advances. The principal brought suit to recover the advances and obtained a judgment. On appeal, the court reversed the judgment, and stated that if it was intended that the agent was personally obligated to repay the advances, it was difficult to understand the omission of such a provision from the supplemental contract, and that the contract did not show an implied promise arising upon the making of the advances. The court held that, under these circumstances, advances made in anticipation of expected commissions "would no more create a debt than would an advancement made by a father to a son in anticipation of the expected inheritance by the latter." 34 Ind.App. at 275, 72 N.E. at 669.

*Richmond Dry Goods Co., supra,* involved a suit by a wholesaler against its traveling salesman to recover advances paid in excess of earned commissions. By the terms of the contract between the parties, the salesman received a drawing account on a regular basis, which was to be charged against his earned commissions. During the salesman's four-year employment the advances consistently exceeded the earned commissions, but the wholesaler made no demand for the excess until the salesman's termination. In affirming a judgment for the salesman the court noted that the contract was silent as to the salesman's personal liability for the excess advances. The court construed the parties' relationship as a joint enterprise, in which the salesman furnished his time and ability and the wholesaler supplied the necessary money. Therefore, it was held that without the promise to repay, either express or fairly implied, the advances were not loans but speculations in a joint enterprise. *Id.* 105 W.Va. at 225, 141 S.E. at 877.

In the third case cited by Skweres, *Geller, supra,* a written contract provided that the salesman would receive commissions on his sales, and that the employer would advance him a certain sum per week against his commission account. When the salesman terminated his employment the advances exceeded the commissions due him, and the employer sued to recover the excess. The federal district court construed the contract against the employer, because it had prepared the agreement. The court noted that the contract, a relatively lengthy document, was silent regarding the particulars of repaying excess commissions, and the absence of such provisions indicated there was no implied agreement to repay excess advances. 312 F.Supp. at 710. In addition, the salesman submitted the affidavit of the employer's assistant president, which related that, at the time the contract was executed, the salesman had been given assurances that he would not have to repay any excess advances. Based on these reasons the court granted summary judgment in favor of the salesman.

■ Skweres is correct that, in general, an agent receiving advances against earned commissions incurs no personal liability to reimburse the principal should the commissions prove insufficient. However, our acceptance of this proposition, as it is contained in *Arbaugh, Richmond Dry Goods Co.,* and *Geller,* does not complete our resolution of this cause. To escape personal liability Skweres still must show there was insufficient evidence of an agreement, either express or implied, that he would repay the excess advances. As it was stated in *Arbaugh, supra,* "[i]f the contract in terms contains a promise by the agent to repay the sums advanced, the transaction would amount to no more than a loan, and the [principal's] right to judgment be undoubted." 34 Ind.App. at 275, 72 N.E. at 669.

■ Parties may mutually modify contractual undertakings, and it is not always

necessary to prove a written or oral modification of a contract because modification of a contract can be implied from the conduct of the parties. *Gorbett, supra.* Even a contract providing that any modification thereof must be in writing may nevertheless be modified orally. *First National Bank of New Castle v. Acra* (1984), Ind. App., 462 N.E.2d 1345; 6 I.L.E. *Contracts* § 193 (1958).

█ The trial court concluded that Skweres and Company had modified their written agreement, based on the findings that: Skweres received Form 1099's for income-reporting purposes; Company withheld no taxes or social security contributions from the payments; and the outstanding balance of excess advances was adjusted weekly with Skweres's knowledge and without his objection. We believe the circumstances of the instant case are easily distinguishable from those of the three cases cited by Skweres.

In *Geller, supra,* the court believed it significant that the written contract, a lengthy and detailed document, provided for the payment of advances but was silent as to repayment if commissions proved insufficient. In addition, the employer had given assurances that it would make no attempt to recover any excess advances, and it had made no attempt to recover from the salesman's predecessor, who had also accumulated excess advances. The court also observed that the employer supplied the salesman with a Form W–2, which is used to report salary and reflects that taxes and social security contributions have been withheld. Here, the written contract made no mention of advances; the parties' agreement regarding payment and repayment of them resulted from a non-written modification. In addition, Company has either brought suit against or made repayment arrangements with the other salesmen who accumulated excess advances. Finally, Company always supplied Skweres with a Form 1099 for income-reporting purposes. Such forms are used to report, among other things, commissions, and do not reflect that taxes and other contributions have been withheld. The consistent use of Form 1099 belies Skwere's characterization of the advances as salary.

Similarly, in *Richmond Dry Goods Co, supra,* the written contract provided that advances were to be made solely against earned commissions, and it was silent as to the salesman's personal liability. Moreover, the employer made no effort to recover the excess advances until the salesman terminated his employment. Again, in the instant case the advances resulted from a non-written modification. In addition, the balance of the excess advances was adjusted on a weekly basis with Skweres's knowledge and tacit approval, and whenever his earned commissions exceeded the paid advances, the excess commissions were applied to reduce the balance of excess advances. Such an arrangement has been held sufficient to show an implied agreement to repay excess advances. *St. Anthony Motor Co. v. Patterson* (1928), 175 Minn. 624, 625, 221 N.W. 719, 720.

In *Arbaugh, supra,* as in the other two cases, the payment of advances was set forth in a written contract that made no mention of the salesman's personal liability for them. An entirely different situation is presented by the case at bar. The advances were made at Skweres's request as a convenience to him for the months he lived in Las Vegas. By their conduct both parties indicated that the advances were not considered a salary and that Skweres would be personally responsible for the repayment of them.

█ Questions regarding the modification of a contract are ones of fact, and are to be determined by the trier thereof upon the evidence in each case. 6 I.L.E. *Contracts* § 191 (1958). Essentially, Skweres asks us to accept his version of the events rather than that of Company, whose version was adopted by the trial court. This we may not do. *Gorbett, supra.*

Accordingly, for the above reasons the judgment of the trial court is in all things affirmed.

Judgment affirmed.

GARRARD, P.J., and ROBERTSON, J., concur.