99 So.2d 420 (1957)
Louis E. BARDWELL, Jr., Plaintiff-Appellant,
v.
Albert SZATMARY, Defendant-Appellee.
No. 8759.
Court of Appeal of Louisiana, Second Circuit.
December 19, 1957.
*421 Gravel, Humphries, Sheffield & Mansour, Alexandria, for appellant.
Holt, Garrett & Holt, Alexandria, for appellee.
AYRES, Judge.
Plaintiff seeks to recover of the defendant $779.72, an amount which defendant's drawing account exceeded his commissions as a commercial photographer. Defendant's contention is that the drawing account, initially in the sum of $100 per week but subsequently reduced to $75 per week, was primarily for traveling and operating expenses and there was no contract or agreement that he would be personally liable for the payment of any excess of the drawing account over the commissions earnedthat the reimbursement of said drawing account was to be solely and only from the commissions earned.
The trial court concluded that plaintiff had failed to establish any agreement, express or implied, whereby defendant became personally obligated to pay any deficit in the drawing account in excess of the commissions. Predicated upon that finding of fact, judgment was rendered rejecting plaintiff's demands, and he has appealed.
The record establishes that during 1952 plaintiff was engaged as a commercial photographer under an agreement with Provine Studio of Alexandria, Louisiana, whereby he was assigned certain territory, consisting generally of south Louisiana, in which to solicit photographic work from schools and other organizations, for both group and individual pictures. Provine Studio handled the detailed office work and processed the films submitted by plaintiff, and packaged and mailed the completed work. Each of the parties received 50 percent of the collections as compensation for his services.
Defendant Szatmary was also employed as a photographer by Provine Studio in the studio proper and on a salary. During January, 1953, defendant was employed to work under plaintiff in plaintiff's territory to replace one Philip Price, who had resigned. Under the agreement entered into, defendant was to receive a commission of 25 percent and he was allowed a drawing account of $100 per week, which, as heretofore stated, was later reduced to $75 per week when it developed the drawing account exceeded defendant's commissions. This arrangement between plaintiff and defendant terminated on or about January 1, 1954, after which an audit was made of defendant's commissions and his drawing account. The audit showed an excess of $779.72 in the drawing account over the commissions. After making amicable demands, to no avail, plaintiff instituted this action.
*422 The agreement between plaintiff and defendant was verbal, and other than that Szatmary was under the impression that his agreement was with the Provine Studio instead of plaintiff, there is little dispute as to the facts other than as to defendant's liability for any excess of the drawing account over commissions earned. In resolving this factual issue, the trial court stated:
"* * *, we do not find in the testimony of Mr. Bardwell or of Mr. Provine anything to the effect that it was expressly stated that Szatmary would be personally liable for any shortage between his drawing account and his earned commissions. There being no expressed agreement in this regard we must then examine the record to determine whether such an understanding was implied and in his regard we find the following: Mr. Provine testified that he did not recall any conversation in which the defendant was ever told expressly that Bardwell would be responsible for Szatmary's shortage. The Court asked Mr. Provine this question twice and his answer was the same. Furthermore, Mr. Bardwell, testified that he did not expressly inform the defendant that he, Bardwell, was to be responsible for any such shortage. As a matter of fact, Mr. Bardwell testified that he did not recall telling the defendant that he, Bardwell, was to receive 25% commission on defendant's gross sales and it logically follows that if defendant did not even know that Bardwell was receiving a commission on defendant's sales he would not expect Bardwell to be responsible for defendant's shortage on his drawing account, if any.
"Another fact from the evidence which indicates the understanding of the parties is that when the first balance was struck on Mr. Szatmary's account in June, 1953 and it was determined at that time that defendant's drawing account was exceeding his commissions, the only action taken was to reduce defendant's drawing account from $100.00 to $75.00 per month. On this occasion defendant was not advised that he would be personally liable for the shortage nor was any attempt made to collect the shortage in any manner, except from defendant's future anticipated commissions.
"From the record as a whole the Court is of the opinion that there was no express or implied agreement that the defendant would be personally liable for any shortage between his drawing account and his earned commissions."
From our own review of the voluminous record, we are led to the same conclusions. Not only do we fail to find manifest error therein, but it can only be concluded from the record that His Honor's findings are eminently correct.
A statement of the law applicable in this case is contained in 57 A.L.R. at page 33. There it is stated:
"The rule to be deduced from the authorities is that where the contract of employment provides for advances to the employee, which are to be charged to and deducted from the commissions agreed by the employer to be paid the employee, as the same may accrue, the employer cannot, in the absence of either an express or implied agreement or promise to repay any excess of advances over the commissions earned, recover from the employee such excess."
In Richmond Dry Goods Co. v. Wilson, 105 W.Va. 221, 141 S.E. 876, 877, 57 A.L.R. 31-33, wherein a salesman employed on a commission basis was sued to recover advances over commissions earned, the aforesaid general rule was followed, and the court stated:

*423 "We cannot construe this engagement to imply that all the risk was taken by the employee. We regard it rather as signifying a joint enterprise in which the employee furnished his time and ability and the employer furnished the money necessary to enable the employee to devote himself thereto. Both expected the adventure to produce a fund (the earned commissions) from which each would be fully compensatedthe one for his time and labor, and the other for his money. The advances are therefore not regarded as loans to the employee but as speculations in a common enterprise. `In its strictly etymological significance, the "advance" of money would not imply a loan. Century Dictionary, "Advance." 1 Am. & Eng.Enc.Law, 2d Ed. 757. We speak of an advance of wages, an advance of salary, yet no one would regard this as a loan of so much money to the employee, which he has promised or is expected to repay. Again, for the purposes of a joint adventure, one agrees to give his services, and the other to advance the capital required. No one would consider the former bound to repay the capital advanced out of his own means. Hence, without a promise to repay, express or fairly to be implied from the agreement under which the advances were made, a promise to `advance' money for a particular purposeas here, the furtherance of the defendant's business,does not import an expectation of its return personally by the person to whom the money was advanced'. Schlesinger v. Burland, supra (42 Misc. [206], 208 [85 N.Y.S. 350], at page 351). See also Arbaugh v. Shockney, [34 Ind.App. 268], page 275, [71 N.E. 232, 72 N.E. 668].
"No reason appears why this case should be excepted from the majority rule. We find no implication in the contract that the defendant is personally liable for the excess advanced."
The general rule has been followed in this State in these cases: American Furniture Co., Inc., v. Snell, La.App., 164 So. 478; Karno's v. Schneider, La.App., 39 So.2d 851, and A. Gagliano, Inc. v. Clark, La.App., 63 So.2d 252. Thus, it may be stated that the established jurisprudence of this State is to the effect that where a salesman is given a drawing account and no contract for repayment of excess over commissions is agreed to or implied, the employer cannot, on the termination of the employment, recover the excess from the salesman.
It is not open to question that persons competent to contract may qualify or impose conditions upon the obligations they assume and that when persons so contract, the agreement is the law between them, and must be enforced as agreed upon. Pursuant to this legal principle, it is permissible that an employer and employee may contract that advances are to be repaid only from a source contemplated by them, and if the fund or source proves to be insufficient to reimburse the advances, no personal responsibility thereafter attaches to the employee.
Therefore, inasmuch as there was no express or implied agreement that the defendant would be personally liable for any excess of his drawing account over his earned commissions, it necessarily follows that the judgment of the trial court denying plaintiff recovery is correct and should be affirmed.
Accordingly, the judgment appealed is affirmed at appellant's cost.
Affirmed.