BEER, Judge.
Plaintiff-appellee, Rai-Lynne Realty, Inc., seeks to recover $3,623.08 from its former sales manager, Joseph Kern, contending that is the amount by which Kern’s drawing account exceeded his earned commissions upon termination of his employment on February 20, 1974. After trial, there was judgment in Rai-Lynne’s favor but only in the amount of $475.94. They now appeal, seeking the full amount of their claim.
Kern’s responsibility to repay advances in excess of his earned commissions depends upon the interpretation which is judicially accorded to two separate contracts between the parties — one dated July 5, 1973, the other, January 8, 1974-
Mrs. Rai Lynne Jarabica, president and owner of Rai-Lynne Realty, testified that she hired Kern as sales manager for the newly formed corporation in July, 1973. *975 She testified that Kern wanted a salaried position but reluctantly agreed to a compensation schedule based on his own commissions plus an override from the sales of agents under his supervision. She maintains that she made it quite clear to him that he was obliged to repay the cash draw advanced to him if it was less than the total amount of his commissions. She testifies that he understood and consented to this procedure. The first contract, dated July 5, 1973, was, accordingly, executed. However, a second contract, dated January 8, 1974, was, thereafter, entered into by the parties. Mrs. Jarabica maintains that this second contract was confected primarily to clarify the question of when Kern would be bound to repay the cash advances. She insists that the cash drawings were no more than loans and that all checks were marked “advances.” She stated that $6,650.00 was advanced to Kern during the entire period of his employment and that $4,123.09 represents the excess of Kern’s drawings over commissions earned. She later amended the net excess amount to $3,623.08, the figure upon which the suit is based.
We note that subsequent to the signing of the second contract, Kern received a $1,000.00 “advance.” During the period between the date of the second contract (January 8, 1974) and the date of his termination (February 20, 1974), Kern earned a total of $524.06 in commissions ($118.86 in January and $405.20 in February, 1974). The difference, $475.94, is the amount of the trial court’s judgment in favor of Rai-Lynne.
J. Earl Pedelahore, accountant for Rai-Lynne, indicated that he treated all of the cash advanced to Kern as a receivable on Rai-Lynne’s income tax return, and further stated that no taxes were deducted from Kern’s checks. He testified Kern was not given “any information to indicate that the amounts paid over to him were taxable

Kern maintains he was only willing to accept a compensation program whereunder the cash advance would be repaid from earned commissions. He avers that he signed the contracts because they contained no provisions relative to his personal liability. In response to a question regarding his treatment of the cash advances as “income” on his 1973 tax return, he testified that he “included a sum from Rai-Lynne Realty in my tax returns.” Though he acknowledges receipt of $5,500.00 in cash advanced from Rai-Lynne in 1973, he reported only $3,500.00 of that amount. He states that this resulted from an accounting oversight.
The trial court’s judgment in favor of Rai-Lynne for $475.94 covered the amount by which the single 1974 cash advance of $1,000.00 exceeded commissions earned by Kern since the signing of the new contract in January, 1974. The court observed that the first agreement signed by the parties in July, 1973, did not contain provisions for repayment of the advances. Citing Grace v. Morales, 210 So.2d 60 (La.App. 1st Cir., 1968), the court was of the view that:
“In the absence of an express or implied agreement so providing, an employer cannot recover from a commissioned employee unearned advances which were to be charged against future commissions earned.”
In support of this holding, we also note, generally, the following cases: Bardwell v. Szatmary, 99 So.2d 420 (La.App. 2nd Cir., 1957), Landry v. Huber, 138 So.2d 449 (La.App. 3rd Cir., 1962), and Shushan Brothers, Inc. v. Ortego, 160 So.2d 800 (La.App. 3rd Cir., 1964).
Indeed, the general law with respect to the matter at bar seems clear. The issue in this litigation is not a question of law. It centers around the interpretation accorded the two written contracts between the parties. The trial court concluded that the first contract neither expressed nor implied any agreement requiring Kern to repay the unearned advances, whereas the second contract did do so. The pertinent portion of the first contract provides that Kern “shall be entitled to a monthly draw in the amount of One thousand dollars paid against funds due for personal commissions *976 and override commissions. In the event his monthly income should exceed the One thousand dollar draw, he may take such excess in cash or apply it to the stock options outlined in paragraph 2.”
The second contract contains the same language noted above but, in addition thereto, also contains the following provision: “If this agreement is terminated, the balance of Joseph N. Kern’s drawing account is due immediately less commissions pending pursuant to the conditions of Paragraphs A and B.”
In written reasons, the trial court succinctly stated its findings and conclusions as follows:
“The requirement for repayment first appeared in the second agreement signed on January 8th. Though Mrs. Jarabica testified that both parties understood this was the arrangement from the beginning, Mr. Kern denied that such was the case.
“The first written contract, prepared by Mrs. Jarabica, was silent on the point. Parole testimony should not be heard to enlarge the written agreement, and having been prepared by Mrs. Jarabica, it should be construed against her.
“The second writing clearly requires repayment but there is nothing in it to suggest that it should be given retroactive effect. In the absence of such an expression of mutual intent, it will be given prospective effect only.” (Emphasis ours.)
Notwithstanding the language in his written reasons, the trial judge made certain observations from the bench at the conclusion of the taking of testimony in connection with the trial of this matter. He stated:
“The first contract is admittedly vague on that, in fact it’s silent on the point. The second contract is explicit on the point though not very artful and I conclude it was intended to be retrospective in its application and was nothing more than a confirmation of the arrangement as they (the parties) had previously understood it. That’s a conclusion I reach.”
Thus, it becomes apparent that the trial court’s initial reaction to the evidence, including the testimony of the parties, was to accord retrospective effect to the language contained in the second contract, i. e. make the wording of the second contract applicable to the provisions of the first contract regarding Kern’s obligation to repay Rai-Lynne the amount by which his drawing account exceeded his earned commissions.
However, it is also apparent that the trial court, upon reflection, concluded that the applicable language of the second contract should not be given retrospective effect but “prospective effect only.”
When we refer back to the trial court’s reasons for judgment, we note that the court acknowledges the conflict between the testimony of Mrs. Jarabica and Mr. Kern. Mrs. Jarabica urges that the “arrangement” with respect to repayment of unearned commissions was “understood . from the beginning.” Mr. Kern denies this. The trial judge heard the testimony, observed the witnesses and, apparently, made a credibility determination with respect to this basic factual disagreement between the litigants.
If, before the first contract had been signed, the principals had categorically agreed that Kern was required to make dollar for dollar reimbursement to Rai-Lynne for all cash advances not offset — dollar for dollar — by earned commissions (either his own or his overrides), then the total amount of Rai-Lynne’s claim would have to be recognized. It is obvious to us that the trial judge was aware of this legal conclusion.
In order to apply the generally unambiguous repayment provision of the second contract to all of the advances made pursuant to the first contract required the trial court to make a factual determination of the intent of the parties at the time of the signing of the first contract. True, the court could be influenced in this determination by the verbiage of the second contract, but also true was the fact that the court could be — and, in this instance, doubtlessly *977 was — influenced by the testimony of the parties.
Since there is no express agreement in the first contract which grants the employer the specific right to recover unearned advances and since no agreement to this effect can be implied without a finding that both parties clearly and unequivocally intended such implication, the ultimate determination of this critical issue rests with the trial judge’s factual finding with respect to the intent of both of those parties.
In spite of the closeness of the call, we cannot say that the trial court, who heard the witnesses and noted their demeanor, composure and reactions, was manifestly erroneous in making the credibility determinations which prompt its decision on the critical issue of intent. And, if there was an absence of mutual intent, there can be no implied agreement.[1] Without an agreement — express or implied — the holding previously noted in Grace v. Morales, supra, must apply. Accordingly, the judgment of the Civil District Court for the Parish of Orleans must be affirmed; each party is to bear his own costs of this appeal.

AFFIRMED.

SAMUEL, J., concurs.
LEMMON, J., concurs with written reasons.

. In V-8 Taxicab Service, Inc. v. Hayes, 322 So.2d 442 (La.App. 4th Cir., 1975), we noted that: “An implied in fact contract is one which rests upon consent implied from facts and circumstances showing a mutual intention to contract.” (Emphasis ours.) This observation is consistent with the mandate of LSA-C.C. Article 1797, which provides: “When the parties have the legal capacity to form a contract, the next requisite to its validity is their consent. This being a mere operation of the mind, can have no effect, unless it be evinced in some manner that shall cause it to be understood by the other parties to the contract.” In construing these various provisions, the Supreme Court, in Gov. Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574 (1970), stated: “While assent to a contract may be implied, that implication must be established and cannot be presumed.”
In McMorris v. Pepperdene, 292 So.2d 892 (La.App. 1st Cir., 1974), writs denied 294 So.2d 840, the court observed: “. . . our review of the evidence convinces us that there never was any meeting of the minds of the parties hereto, and in the absence of such consent, the prerequisite to the existence of a contract, no such contract, verbal or otherwise, has been established by a requisite preponderance of the evidence.”
In Pooler Building Materials, Inc. v. Hogan, 244 So.2d 62 (La.App. 1st Cir., 1971), our brothers of the First Circuit observed: “In this case, as in the case of all contracts, there must be consent by both parties as to all aspects of the subject of the contract. The consent may be express or implied from the actions of the parties. In cases not expressly covered by law, it is left to the discretion of the judge to determine if consent is to be implied in the particular circumstances of the case. Civii Code, Article 1818.” (Emphasis ours.) Article 1818 states: “Where the law does not create a legal presumption of consent from certain facts, ..then, as in the case of other simple presumptions, it must be left to the discretion of the judge, whether assent is to be implied from them or not." (Emphasis ours.)