GUIDRY, Judge.
This is a suit in contract. The factual circumstances giving rise to this litigation are, for the most part, without dispute.
On June 9, 1978, defendant was employed by plaintiff as a salesman under a written contract. According to the contract, defendant was to be compensated for his work on the basis of commissions on sales completed by him. By the terms of the contract defendant was allowed a weekly advance remuneration, referred to as a “draw”, which was deductible monthly from earned commissions. Defendant terminated his employment with plaintiff effective August 15, 1979. According to a summary prepared by plaintiff’s vice-president, the total of plaintiff’s “draws” during the period of his employment exceeded the amount of his earned commissions by the sum of $2666.95. Plaintiff sued to recover this sum. The trial court rendered judgment dismissing plaintiff’s suit. Plaintiff appealed.
The dispute between the parties centers around the following provision of the employment contract:

“It is further understood that Jordan’s will allow an advance remuneration, hereinafter called a ‘draw’, to be made weekly which will be deducted monthly from commission earned for the month. This draw is advanced monies against commission to be earned. It is understood Salesperson will receive no other remuneration other than commissions earned from sales completed by Salesperson. ‘Completed Sales’ definition is sales received, delivered, installed and paid for.”

At the outset we observe that the jurisprudence of this State is clear to the effect that an excess of advances to an employee, over and above commissions deducted therefrom, cannot be recovered by the employer upon termination of the employee’s employment absent an express or implied agreement or promise to repay the excess. Bardwell v. Szatmary, 99 So.2d 420 (La.App. 2nd Cir. 1957); Landry v. Huber, 138 So.2d 449 (La.App. 3rd Cir. 1962); Rex-Metallic Casket Company v. Gregory, 115 So.2d 639 (La.App. 2nd Cir. 1959); Savoy v. Soileau, 177 So.2d 644 (La.App. 3rd Cir. 1965); Rai-Lynne Realty, Inc. v. Kern, 336 So.2d 974 (La.App. 4th Cir. 1976).
Appellant urges that the trial court erred in failing to interpret the contract as requiring defendant to repay the unearned advances. In this connection appellant argues that the parties to the contract, at the time of its confection, clearly intended and understood that Pharis would owe Jordan the excess of draws over commissions. In the alternative, appellant urges that following termination of defendant’s employment, he verbally acknowledged that he owed plaintiff the unearned advances. We find merit in neither of appellant’s contentions.
Agreements legally entered into have the effect of law on those who have formed them and the courts are bound to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. Articles 1901,1945, and 1963. The intent of the parties is to be determined by the words of the contract and when these are clear and explicit, the terms of the contract must prevail. Sleet v. Gray, 351 So.2d 286 (La.App. 3rd Cir. 1977).
*260 The contract entered into by the parties, and particularly the portion above quoted, does not expressly require repayment by Pharis of the excess of draws over commissions. Jordan’s managerial employees testified, over defendant’s objection, that at the time the employment contract was entered into it was understood and contemplated that Pharis would be responsible for repayment of the excess of draws over commissions. Pharis testified that the matter of monies drawn in excess of commissions earned was never discussed by the parties. The trial judge resolved this issue favorable to defendant concluding that the contract in question neither expressly nor impliedly required repayment by Pharis of the excess of draws over commissions. Finding no clear error in this determination it must be affirmed.
In the alternative, appellant contends that following termination of defendant’s employment he acknowledged owing plaintiff the monies drawn in excess of commissions earned in a meeting held June 22, 1979 and therefore it is entitled to judgment.
Defendant first informed his immediate superior of his intention to terminate his employment and return to school in May of 1979. Plaintiff sought to dissuade defendant from leaving its employ. When its efforts proved unsuccessful, plaintiff requested that defendant sign an agreement expressly binding him to repay the monies drawn in excess of commissions. Defendant refused to sign this agreement. Thereafter, he was asked to sign a promissory note for the amount allegedly due but refused. Presumably because of defendant’s adamant refusal to acknowledge any indebtedness to plaintiff, on June 22, 1979, without any prior notice, he was summoned to a meeting at plaintiff’s place of business. There were present at this meeting, defendant, the three principal owners of Jordan’s Stationers and the latter’s Vice-President.[1] Defendant described the meeting as inquisitorial in nature. Defendant admits that at this meeting he verbally acknowledged that he owed plaintiff the monies drawn in excess of commissions earned but testified that he did so without any real intention of acknowledging an indebtedness to plaintiff but rather in order to placate those present at the meeting. In this regard defendant testified as follows:

“A. Yes, Sir. Yes, Sir, I’ll tell you what I meant. I was acknowledging the fact that Jordans was telling me that I owed them this money. I was looking for a way to get out of that meeting. I was surrounded and I wanted to get out.

Q. Pardon me, I didn’t hear you.

A. I was surrounded and I wanted to get out. I wanted to get out of the meeting. I had been asked that question repeatedly and I think if you’ll notice also on the transcript several people were speaking before I was even given opportunities to answer on several occasions. That document may or may not reflect that, but that was the way it was.

Q. You weren’t acknowledging that you owed them any sum of money at all?

A. No, Sir."

We like the trial judge do not view any statements by defendant at this meeting, allegedly acknowledging any indebtedness to plaintiff, as constituting an express promise to repay the unearned advances. Previous to this meeting defendant had consistently denied owing any sum of money to Jordans and adamantly refused to execute the written documents presented to him by plaintiff. Under such circumstances, we conclude that defendant is not personally liable for any repayment of excess advances over commissions.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.
AFFIRMED.

. The Vice-President took notes at this meeting and prepared a transcript thereof which was filed in evidence as defendant’s exhibit. 2.